PEOPLE'S COUNSEL FOR BALTIMORE COUNTY *v.*
A. V. WILLIAMS ET AL.

[No. 798, September Term, 1979.]

*Decided June 10, 1980.*

The cause was argued before LOWE, MELVIN and COUCH,
JJ.

*John W. Hessian, III,* with whom was *Peter Max
Zimmerman* on the brief, for appellant.

*W. Lee Harrison,* with whom were *Harrison & Harrison* on the brief, for appellees.

MELVIN, J., delivered the opinion of the Court.

This is an appeal by the People's Counsel for Baltimore County from an order, dated June 26, 1979, of the Circuit Court for Baltimore County (Brizendine, J.). The order affirmed the decision of the Baltimore County Board of Appeals rezoning approximately 13 acres of appellees' land from a M. L.-I.M. (Manufacturing Light-Industrial Major) classification to a B.M. (Business Major) Classification. The Board's decision had in turn affirmed the decision of the Deputy Zoning Commissioner granting the appellees' petition for the rezoning.

At the hearing before the Board and the Circuit Court, People's Counsel was the only protestant. When he appealed the Board's decision to the Circuit Court, the appellees filed a motion to dismiss the appeal on the ground that the People's Counsel had no standing to prosecute the appeal. The motion was denied. When the Circuit Court affirmed the Board's rezoning decision, the People's Counsel noted an appeal to this Court contending that appellees had failed to show sufficient evidence of mistake in the comprehensive zoning map adopted by the County Council in October, 1976, to justify the requested rezoning. The appellees filed no cross-appeal, nor did they file a motion to dismiss the appeal pursuant to Md. Rule 1035, either separately or with their brief (See § b and § c of Rule 1035). They did argue in their brief, however, that the People's Counsel has no standing here and had no standing below to contest the Board's decision. The People's Counsel filed a reply brief addressing that issue. We shall, therefore, regard the appellees' argument in their brief on the issue as a motion to dismiss this appeal. So considered, we find no merit to the motion and shall deny it for the reasons set forth below.

### Motion to Dismiss

At the general election held in November, 1974, the voters of Baltimore County adopted an amendment, effective

December 5, 1974, to Section 524.1 of their Home Rule Charter. The amendment provided for the appointment by the county executive, subject to confirmation by the county council, of "a people's counsel who shall represent the interests of the public in general in zoning matters as hereinafter set forth." The amendment set forth the People's Counsel's powers and duties as follows:

> "A. He shall appear as a party before the zoning commissioner of Baltimore County, his deputy, the county board of appeals, and the courts *on behalf of the interests of the public in general,* to defend the comprehensive zoning maps as adopted by the county council, and in any matter or proceeding now pending or hereafter brought involving zoning reclassification and/or variance from or special exception under the Baltimore County Zoning Regulations, as now or hereafter in force and effect, in which he may deem the public interest to be involved. *He shall have in such appearance, all the rights of counsel for a party in interest, including but not limited to the right to present his case, to cross examine, to object, to be heard, and to file and prosecute an appeal in his capacity as people's counsel from any order or act of the zoning commissioner of Baltimore County or his deputy, or of the county board of appeals to the courts as an aggrieved party pursuant to the provisions of section 604 of this Charter to promote and protect the health, safety and general welfare of the community."* (Emphasis added).

The record in this case shows that the People's Counsel in his official capacity appeared and fully participated in the proceedings before the Board and the court below. We think the charter amendment gave him the right to do so as well as to prosecute the appeal to this Court.

Section 5 of Article 25A of the Annotated Code of Maryland (1957, 1973 Repl. Vol., 1979 Cum. Supp.) sets forth the "Express Powers" of those counties that have adopted a

"Home Rule" charter under the provisions of Article XI-A of the Maryland Constitution. Subsection (U) of Section 5 grants to those counties the power to enact local laws providing for the establishment of a county board of appeals to hear and decide controversies concerning, *inter alia,* the application of the county's zoning laws. Subsection (U) further provides:

> "Any person *aggrieved* by the decision of the board and a party to the proceeding before it may appeal to the circuit court for the county which shall have power to affirm the decision of the board, or if such decision is not in accordance with law, to modify or reverse such decision, with or without remanding the case for rehearing as justice may require. Any party to the proceeding in the circuit court *aggrieved* by the decision of the said court may appeal from such decision to the Court of Special Appeals. The review proceedings provided by this subsection shall be exclusive." (Emphasis added).

Pursuant to this grant of power, Section 604 of the Baltimore County Charter, entitled "Appeals from Decision of the Board," originally enacted in 1956, and as presently in effect, provides in relevant part as follows:

> "Within thirty days after any decision by the county board of appeals is rendered, *any party to the proceeding* who is aggrieved thereby may appeal such decision to the circuit court of Baltimore County, which shall have power to affirm the decision of the board, or, if such decision is not in accordance with law, to modify or reverse such decision, with or without remanding the case for rehearing, as justice may require ... Within thirty days after the decision of the circuit court is rendered, *any party to the proceeding who is aggrieved* thereby may appeal such decision to the court of appeals of this state. [Court of Special Appeals] The review proceedings provided by this section shall be exclusive." (Emphasis added).

Appellees argue that under neither the "Express Powers Act" (Article 25A) nor the county charter (Section 604) can the People's Counsel be considered *"aggrieved"* by the decision of the board because he does not fit within the definition of that word as determined by the Maryland cases. Appellees cite *Bryniarski v. Montgomery County,* 247 Md. 137, 144, 230 A.2d 289 (1966), where the Court of Appeals said:

> "Generally speaking, the decisions indicate that a person aggrieved by the decision of a board of zoning appeals is one whose personal or property rights are adversely affected by the decision of the board. The decision must not only affect a matter in which the protestant has a specific interest or property right but his interest therein must be such that he is personally and specially affected in a way different from that suffered by the public generally. *DuBay v. Crane,* 240 Md. 180, 185, 214 A.2d 487 (1965). The circumstances under which this occurs have been determined by the courts on a case by case basis, and the decision in each case rests upon the facts and circumstances of the particular review."

Because it is the People's Counsel function to protect the "interests of the public in general," appellees argue that it "would be impossible" for him in his official capacity to show that he "has a specific interest or property right" and that "he is personally and specially affected in a way different from that suffered by the public generally." Thus, argue appellees, he has no standing to appeal and the appeal must be dismissed.

What the appellees overlook is that the "case by case" determinations of whether, in particular cases, a person is an "aggrieved" party, and thus entitled to appeal decisions of the board, have been made in the absence of any legislative definition of the word. As stated in *Bryniarski,* pages 143-144, "there have been many cases in Maryland and in other states considering the meaning of 'a person

aggrieved,' but apparently the word 'aggrieved' has never been legislatively defined." In the case before us, however, Section 524.1 of the Charter of Baltimore County provides in unambiguous terms that the People's Counsel "shall have ... all the rights of counsel for a *party in interest* ... including the right ... to file and prosecute an appeal in his capacity as People's Counsel from any order or act ... of the county board of appeals to the courts *as an aggrieved* party pursuant to the provisions of section 604 of this Charter to promote and protect the health, safety and general welfare of the community." (Emphasis added). As we have seen, Section 604 of the Charter, quoted *supra,* provides that "any party to the proceeding [before the board] who is aggrieved" may appeal "to the circuit court of Baltimore County" and then to the Court of Special Appeals. When the two sections (§§ 524.1 and 604) are read together, it is manifest that, whatever *judicial* interpretation may in the past have been given to the word "aggrieved" absent any legislative definition thereof, in Baltimore County the People's Counsel is now "legislatively defined" as one who may occupy the status of an "aggrieved" party entitled to appeal "to the courts."

But the appellees argue that the charter amendment purporting to give the People's Counsel the status of one who may be an "aggrieved party", is unconstitutional. Their argument goes like this: Section 2 of Art. XI-A of the Maryland Constitution provides that only the General Assembly may extend or enlarge the "express powers" granted to charter counties by Article 25A; such powers may not be changed by the charter itself. Section 5 (U) of Article 25A provides that only an "aggrieved party" may appeal from a decision of the board of appeals. An "aggrieved" person has been judicially defined as "one whose personal or property rights are adversely affected by the decision of the board ... in a way different from that suffered by the public generally." (*Bryniarski v. Montgomery County, supra.*). Therefore, appellees argue, because the People's Counsel does not fit within that judicial definition the People's Counsel may have the right to appeal only if the General

Assembly amends Article 25A to so provide. We find no merit to this argument. As already indicated, the word "aggrieved" is not defined in Article 25A. We note, also, that by Section 5 (X) of Article 25A the General Assembly has granted to charter counties the broad power "[t]o enact local laws, for the protection and promotion of public safety, health, morals and welfare, *relating to zoning and planning.*" (Emphasis added). We conclude that Section 524.1 of the Baltimore County Charter granting to the People's Counsel the status of one who may be "aggrieved" by a decision of the board of appeals and therefore entitled to appeal therefrom does not enlarge or extend the powers granted to the County by Article 25A and is therefore permissible under the Maryland Constitution.

### Error in Comprehensive Rezoning

Although we have found that the People's Counsel is entitled to enter the fray in this appeal, we do not find that he is entitled to win the day. He contends that the trial judge was wrong in upholding the decision of the board of appeals. The Board "agree[d] fully" with the opinion of the Deputy Zoning Commissioner who had found that "the Petitioner has proven error in the Comprehensive Zoning Map. . ."

In *Boyce v. Sembly,* 25 Md. App. 43, 334 A.2d 137 (1975), Judge Davidson (now a member of the Court of Appeals) said for this Court, at pp. 50-51:

"In this case, in order to grant the requested reclassification, the Board needed strong and substantial probative evidence that there was 'mistake' or 'error' in the comprehensive zoning of 1971. In order to assess the evidence before the Board, it is necessary to understand the inherent nature of the terms 'mistake' or 'error' as they are used in zoning law. A perusal of cases, particularly those in which a finding of error was upheld, indicates that the presumption of validity accorded to a comprehensive zoning is overcome and error or

mistake is established when there is probative evidence to show that the assumptions or premises relied upon by the Council at the time of the comprehensive rezoning were invalid. Error can be established by showing that at the time of the comprehensive zoning the Council failed to take into account then existing facts, or projects or trends which were reasonably foreseeable of fruition in the future, so that the Council's action was premised initially on a misapprehension. *Bonnie View Club v. Glass,* 242 Md. 46, 52-53, 217 A.2d 647, 651 (1966); *Jobar Corp. v. Rodgers Forge Community Ass'n.,* 236 Md. 106, 112, 116-118, 121-22, 202 A.2d 612, 615, 617-618, 620-21 (1964); *Overton v. County Commissioners,* 225 Md. 212, 216-217, 170 A.2d 172, 174-176 (1961); *see Rohde v. County Board of Appeals,* 234 Md. 259, 267-268, 199 A.2d 216, 218-19 (1964). Error or mistake may also be established by showing that events occurring subsequent to the comprehensive zoning have proven that the Council's initial premises were incorrect. As the Court of Appeals said in *Rockville v. Stone,* 271 Md. 655, 662, 319 A.2d 536, 541 (1974):

'On the question of original mistake, this Court has held that when the assumption upon which a particular use is predicated proves, with the passage of time, to be erroneous, this is sufficient to authorize a rezoning.' "

In *Tennison v. Shomette,* 38 Md. App. 1, 379 A.2d 187 (1977), we said, at page 5: "Once evidence strong enough to render the issue of rezoning fairly debatable is produced, the change in zoning will be upheld since it is not the function of the courts to substitute their judgment for that of the zoning authority."

Applying these principles to the instant case, and after a careful review of the record, we conclude that the evidence before the board was sufficient to render the issue of "error"

or "mistake" fairly debatable. The subject property is a relatively small tract (13 acres) located within a rectangle that is bounded by four major highways (Rossville Boulevard, Pulaski Highway, the Baltimore Beltway and Philadelphia Road). Two-thirds of the rectangle is zoned and used for retail commercial uses. Immediately adjacent to the 13 acre tract, within the rectangle, is a 90 acre tract zoned B. M. on which is located a regional shopping center known as Golden Ring Mall.

Prior to the adoption of the comprehensive rezoning map in October 1976, the Golden Ring Mall was a non-conforming use in an M. L. zone and the subject property was zoned B. L. as a result of a reclassification by the Board earlier that year without opposition. In adopting the comprehensive rezoning map in October 1976, the County Council removed the M. L. zoning from Golden Ring Mall and placed its 90 acres in a B. M. zone. At the same time the council changed the immediately adjacent subject property to an M. L. zone, the zoning that applied to most of the tract before it had been reclassified to B. L. earlier in the year.

There was probative evidence before the Board that the County Council, in reclassifying the subject property back to an M. L. zone, relied upon "assumptions or premises" that "were invalid." *Boyce v. Sembly, supra.* Two "assumptions or premises" were (1) that the property was a "prime industrial site" and (2) that not to reclassify it for industrial (M. L.) use "would drastically reduce the amount of available 'ready-to-go' industrially-zoned land other than the industrial parks." There was expert evidence, however, that the property did not have "any exceptional value as an industrial parcel of land." There was also evidence that immediately beyond the rectangle in which the subject property is located there are hundreds of acres of industrially zoned land that "has been underdeveloped for many years" in spite of the availability of "all utilities, roads, and railroads particularly, which ... [the subject property] do[es] not have." Another "assumption or premise" relied upon by the County Council was that to zone the property for commercial use would not be in accord with the

Planning Board's policy "on land use at Freeway interchanges." Aside from the fact that the Golden Ring Mall property, which is *immediately* adjacent to the Beltway interchange, was comprehensively rezoned from industrial to commercial use in apparent disregard of this policy, the subject property is not "at" a freeway interchange. In sum, we think the evidence before the Board of Appeals was sufficient to overcome the presumption of validity accorded to the comprehensive rezoning and to make the issue of the requested change to a B. M. classification fairly debatable. The judgment below must therefore be affirmed. *Tennison v. Shomette, supra.*

> *Judgment affirmed.*
> *Costs to be paid by appellant.*