501 A.2d 1343

**PEOPLE'S COUNSEL FOR BALTIMORE COUNTY**

v.

**C. Dennis WEBSTER.**

No. 361, Sept. Term, 1985.

Court of Special Appeals of Maryland.

Jan. 8, 1986.

Phyllis Cole Friedman and Peter Max Zimmerman, Towson, for appellant.

Robert A. DiCicco, Towson, for appellee.

Argued before MOYLAN, KARWACKI and ROBERT M. BELL, JJ.

KARWACKI, Judge.

This zoning case presents two issues:

I. Does the Baltimore County Master Plan 1979–1990, as amended on January 5, 1981, prohibit the use of the appellee's property for a new office building permitted within its R–C zoning classification?

II. Did the County Board of Appeals (the Board) err in affirming the grant of a special exception for the

construction of a new office building, without making a specific finding that the new building would be highly compatible with the present or prospective uses of nearby residential property?

Most of the facts are not in dispute. In 1980 and 1981, the appellee purchased two old homes located on the west side of Bosley Avenue south of Joppa Road in Towson, Maryland. The appellee, who is a contractor and real estate developer, proposed to raze the houses, which were in poor structural condition, and build a townhouse office condominium building. The proposed building would contain five twenty foot wide condominium units. Each unit would have 2000 square feet of space distributed on three levels. The height of the building would be 35 feet.

On October 27, 1983, the appellee presented his plan to the County Review Group (the CRG)[1] which under §§ 22–6 to 22–59 of the Baltimore County Code (1978, 1984 Supp.) is empowered to hear comments on such a plan, and issue its approval or disapproval. At the October 27 meeting, the CRG listened to the plan as presented by the appellee's engineer, and considered written comments submitted by various county departments. The CRG approved the plan following that meeting.

The appellee then proceeded with his petition to the Zoning Commissioner for the special exception required for the project under the R–O classification of § 203 of the Baltimore County Zoning Regulations (1981 ed.) (hereafter "BCZR"). Under this regulation governing the R–O zone, Class A office buildings are permitted as of right, and Class B office buildings may be permitted by special exception.[2]

---

**1.** Sec. 22–57 provides for the composition of the CRG as including the directors of the department of public works and the office of planning and zoning or their designated representatives. Additionally, other county agencies may be represented at meetings of the CRG at the request of the chairman.

**2.** *Office building, Class A:* A principal building that was originally constructed as a 1-family or 2-family detached dwelling and that is

At a hearing before the Commissioner, the appellee's engineer again presented the development plan. On January 10, 1984, the Commissioner granted the petition. The Commissioner in his written opinion concluded that the appellee had met his burden of proof under § 502 of the BCZR [3] and had "shown that the proposed use would be conducted without real detriment to the neighborhood and would not actually adversely affect the public interest." The Commissioner further observed that the proposed use would not be detrimental to the safety or general welfare of

---

converted to office use without any external enlargement for the purpose of creating the office space or otherwise accommodating the office use. For the purposes of this definition, enclosure of a porch of a house does not constitute external enlargement. [Bill No. 13–80]

*Office building, Class B:* A principal building that—

1. Is devoted primarily to office use, clinic or group-medical-center use (including the practice of dentistry), or opticians' or optometrists' establishments;
2. Is not attached to any other building;
3. Is the only building on the lot on which it is situated;
4. Has a floor area ratio of no more than 0.5; and
5. Is no higher than 35 feet.

[Bill No. 13–80] Section 101, BCZR

3. 502.1—Before any Special Exception may be granted, it must appear that the use for which the Special Exception is requested will not: [B.C.Z.R., 1955; Bill No. 45, 1982.]

   a. Be detrimental to the health, safety, or general welfare of the locality involved; [B.C.Z.R., 1955.]
   b. Tend to create congestion in roads, streets or alleys therein; [B.C.Z.R., 1955.]
   c. Create a potential hazard from fire, panic or other dangers; [B.C.Z.R., 1955]
   d. Tend to overcrowd land and cause undue concentration of population; [B.C.Z.R., 1955.]
   e. Interfere with adequate provisions for schools, parks, water, sewerage, transportation or other public requirements, conveniences, or improvements; [B.C.Z.R., 1955.]
   f. Interfere with adequate light and air; [B.C.Z.R., 1955, No. 45, 1982.]
   g. Be inconsistent with the purposes of the property's zoning classification nor in any other way inconsistent with the spirit and intent of these Zoning Regulations; nor [Bill No. 45, 1982.]
   h. Be inconsistent with the impermeable surface and vegetative retention provisions of these Zoning Regulations. [Bill No. 45, 1982.]

the area, and it would not be inconsistent with either the purposes of the property's zoning classification or the spirit and intent of the zoning regulations.

On July 27, 1984, the Board affirmed both decisions. The Circuit Court for Baltimore County affirmed this action of the Board on March 6, 1985.

## I.

Article V, Subdivision 6, of the Baltimore County Charter (1978 ed., 1984 Supp.) creates the Office of Planning and Zoning. The office is directed by § 522.1 of that Charter to plan for the development of the county, including the preparation of a master plan, a zoning map, subdivision regulations, and zoning rules and regulations. Section 523(a) of the Charter provides that the master plan shall set forth comprehensive objectives, policies, and standards to serve as a guide for the development of the county and § 523(b) states that the zoning maps are to be consistent with the master plan. Under § 523, the County Council, upon receipt of the master plan and zoning maps, and the rules and regulations, is empowered to accept or modify them and then adopt them by resolution.

Sections 522.1 and 523 of the Charter were adopted by the County Council in 1978, approved by the voters of the county, and became effective December 8, 1978. The Charter Revision Commission which proposed these charter amendments commented on the proposed § 523 in its report filed on March 14, 1978:

> This section number corresponds to an existing number in the Charter, but the text is all new. Because the master plan is a basic document which should serve as a guide to orderly development in the County, the Commission recommends that a broad definition of it be given in the Charter. The Commission recommends that the County Council alter the Master Plan as necessary, then adopt it by resolution. It is not the intent of the Commission that all actions in the County should automatically be required

to conform with every detail of the master plan because of this resolution. It would be up to the Council to define any enforcement mechanisms by legislative act. However, the Commission does want the development of a Master Plan to which the Council can and will make a commitment. The Council then can enact a zoning map consistent with the master plan, as provided in subsection 523(b), and the master plan will provide a reference document Council members can depend upon when they must resist pressures to draw zoning maps to conform with transient political demands.

Pursuant to § 522.1, the Office of Planning and Zoning prepared a master plan, the Baltimore County Master Plan 1979–1990, which was accepted by Council resolution on November 19, 1979.[4] The master plan was amended on January 5, 1981 by Council Resolution 2–81 adopting the Towson Town Center Plan (the Towson Plan). The Towson Plan had evolved over a period of years and was the product of studies responding to the need for new land use planning in the Towson area because of its emergence as a highly developed commercial center. Towson Town Center Working Paper 2, prepared by consultants employed by the county, commented on the growing need for office space in Towson and on the fact that most of that space was currently being supplied by conversion of residential structures to office use as then permitted by special exception under the DR 16 zoning classification. The consultants noted that under DR 16 permitted use, there were no

---

**4.** That resolution provided in part:

[T]hat the Master Plan submitted by the Office of Planning and Zoning and adopted by the Baltimore County Planning Board, including mapped and written proposals, are hereby amended and modified, and as so amended and modified, are hereby adopted and declared to incorporate and be comprised of the following written and mapped components, which will serve as a guide for the development of the County, and which may be subject to such further modifications as deemed advisable by the Baltimore County Council:.... Resolution No. 71–79.

restrictions in the zoning regulations governing the height or the interior or exterior dimensions of such office buildings. They went on to recommend:

> We believe that office districts should be established in areas of the county where office development is desirable. Then DR 16 zones could revert to their original purpose of providing transition zones between densely developed and residential areas. This could be accomplished by limiting the area, height and Floor Area Ratio of office buildings which could be granted special exceptions in DR 16 zones. We recommend that no new office buildings should be allowed, but conversion of existing residential structures would continue. Thus, eventually the area of West Towson immediately adjacent to Bosley Road [sic] would become almost entirely offices, but would retain the density, scale and character of a residential area. In this way it would fulfill its function as a transition zone.

When the Towson Plan was adopted as an amendment to the master plan, this working paper was incorporated therein.

Prior to the amendment of the master plan to incorporate the Towson Plan, the County Council in 1980 responded to the suggestions of the consultants just quoted. It enacted legislation prohibiting construction of new office buildings in DR 16 zones. Council Bill 167–80, Section 1B02.01, BCZR. It also established a new zoning classification, R–O, specifically for those residential areas near commercial centers. Also in a comprehensive rezoning map adopted in 1980 it zoned such areas of the county, including the subject property, as R–O. Prior to this reclassification, the appellee's property had been zoned DR 16. The bill creating the new R–O classification as § 203 of the BCZR provided:

> 203.1—Declaration of Findings. It is found:
>
> A. That residential use of certain sites may not be economically feasible in some predominantly moderate-density residential areas that are within or near town

centers, are near C.C.C. districts, or lie along commercial motorways; [Bill No. 13–80]

B. That neither business zoning nor high-density residential zoning of those sites is appropriate; and [Bill No. 13–80]

C. That, with appropriate restrictions, houses converted to offices and, in some cases, small Class B office buildings and similar buildings are suitable, economically feasible uses of such sites. [Bill No. 13–80]

203.2—Statement of Legislative Policy. The R–O zoning classification is established, pursuant to the findings stated above, to accommodate houses converted to office buildings and some small Class B office buildings in predominantly residential areas on sites that, because of adjacent commercial activity, heavy commercial traffic, or other, similar factors, can no longer reasonably be restricted solely to uses allowable in moderate-density residential zones. It is intended that buildings and uses in R–O zones shall be highly compatible with the present or prospective uses of nearby residential property. It is not the R–O classification's purpose to accommodate a substantial part of the demand for office space, it being the intent of these Zoning Regulations that office-space demand should be met primarily in C.T. districts, C.C.C. districts, and, to a lesser extent, in other commerical areas. [Bill No. 13–80]

▪ The appellant, in opposing the appellee's proposal for the erection of a new office building on the subject property, argues that such development of property west of Bosley Avenue is barred by § 523 of the Charter since it is repugnant to the master plan. The initial answer to this assertion is found in the plain language of this Charter provision. *Smelser v. Criterion Insurance Co.*, 293 Md. 384, 444 A.2d 1024 (1982). Section 523 provides:

(a) *Definition and implementation of the master plan.* The master plan shall be a composite of mapped

and written proposals setting forth comprehensive objectives, policies and standards to serve as a guide for the development of the county. Upon receipt of the master plan from the office of planning and zoning, the county council shall accept or modify and then adopt it by resolution.

(b) *Definition and implementation of the zoning maps.* The zoning maps shall show the boundaries of the proposed districts, divisions and zones into which the county is to be divided consistent with the master plan. Upon receipt of the zoning map from the office of planning and zoning, the county council shall accept or modify and then adopt it by legislative act. (Bill No. 83, 1978, § 3)

This charter language is not vague or ambiguous and evidences the clearest intent of its framers. That the master plan was to serve as a guide to the County Council in its promulgation of the maps and regulations when executing the zoning process is patent from the resolution of the Council in adopting the master plan. *See* fn. 4, *supra.* This has been the generally accepted role of the master plan in this context. As we noted in *Floyd v. County Council of P.G. Co.,* 55 Md.App. 246, 258–59, 461 A.2d 76 (1983):

[I]t is commonly understood, in Maryland and elsewhere, that Master Plans are guides in the zoning process. *Chapman v. Montgomery County Council,* 259 Md. 641, 271 A.2d 156 (1970); *Board of County Comm'rs. for Prince George's County v. Edmonds,* 240 Md. 680, 215 A.2d 209 (1965); see *Montgomery County v. Woodward & Lothrop, Inc.,* 280 Md. 686, 376 A.2d 483, *cert. denied,* 434 U.S. 1067 [98 S.Ct. 1245, 55 L.Ed.2d 769] (1977) (Master Plan a guide, not a straitjacket); *Kanfer v. Montgomery County Council, supra* [35 Md.App. 715, 733, 373 A.2d 5, *cert. denied,* 281 Md. 741 (1977) ] (plan a "prophecy" as to future development). Master Plan

guidelines are mandatory only if an ordinance so provides. *Cf. Coffey v. Md.-Nat'l. Cap. Park & Pl. Comm'n.,* 293 Md. 24, 441 A.2d 1041 (1982) (subdivision case); *Board of County Comm'rs. of Cecil County v. Gaster,* 285 Md. 233, 401 A.2d 666 (1979).

See also *Md.-Nat'l Cap. P. & P. v. Wash. Bus. Pk.,* 294 Md. 302, 449 A.2d 414 (1982).

▇ There is a second and equally compelling reason for rejecting the appellant's proposition that R–0 zoning of the appellee's property is inconsistent with the master plan. When viewed in its historical context, we perceive no inconsistency. Rezoning of the properties abutting the west side of Bosley Avenue, including that of the appellee, was a part of a comprehensive zoning map revision in the county which occurred in 1980 accompanied by the Council's creation of a new zoning classification, R–0. Such action by the Council reflected the studies which were then underway indicating a need for a more restricted transition zone between the commercially zoned core of Towson and the residential sections which surround it. Towson Town Center Working Paper 2, quoted above, was prepared in that light. It, however, was prepared before the Council created the R–0 zone and adopted the regulations which would govern permitted uses within the new classification. The statement contained within that working paper to the effect that no new office buildings should be allowed in this transition zone was obviously aimed at the permitted use of property in this area for new office building construction under the existing DR 16 classification. That use, then permitted by special exception in DR 16 zones, was unrestricted as to the height or dimensions of such office construction. In enacting § 203 of the BCZR and placing the properties on the west side of Bosley Avenue, as well as other properties throughout the county similarly situated in an R–0 zone, the Council fully responded to the concerns of the consultants who drafted the Towson Town Center Working Paper 2,

later incorporated in the Towson Plan adopted as part of the master plan in 1981.

## II.

The second issue presented for our determination need not detain us long. The appellant asserts that the Board failed to find that the appellee's proposed office building "shall be highly compatible with the present or prospective uses of nearby residential property" as required before the special exception could be granted. BCZR § 203.2. The appellant is wrong.

In its written opinion the Board noted that, "[t]here was testimony and evidence produced during this hearing that all the requirements of § 502.1 (of the BCZR) would be met by this petition." Our review of the record convinces us that there was substantial evidence before the Board to justify such a conclusion. Section 502.1 of the BCZR, *supra*, requires that before the Board grants a special exception it must appear that the use will not:

g. Be inconsistent with the purposes of the property's zoning classification nor in any other way inconsistent with the spirit and intent of these Zoning Regulations.

The Board's conclusion that this condition to the granting of a special exception under § 203 of the BCZR was met necessarily implied a finding that the proposed use was a compatible one as required by that section.[5]

JUDGMENT AFFIRMED;

COSTS TO BE PAID BY BALTIMORE COUNTY.

---

5. In his brief, the appellee challenges for the first time on appeal the appellant's standing to oppose his use of the subject property. His challenge is untimely and therefore not before us. Md.Rule 1085. Moreover, it is meritless. Baltimore County Charter, Art. V, § 524.1 (1978 ed., 1984 Supp.); *People's Counsel v. Williams,* 45 Md.App. 617, 415 A.2d 585 (1980).