24 A.3d 167

**HNS DEVELOPMENT, LLC**

v.

**PEOPLE'S COUNSEL FOR BALTIMORE COUNTY, et al.**

No. 639, Sept. Term, 2010.

Court of Special Appeals of Maryland.

July 8, 2011.

4

John B. Gontrum (Jennifer R. Busse, Whiteford, Taylor & Preston, L.L.P., on the brief), Towson, MD, for appellant.

J. Carroll Holzer and Peter Max Zimmerman (Carole S. DeMilio, Holzer & Lee, on the brief), Towson, MD, for appellee.

Panel: EYLER, DEBORAH S., WATTS, and CHARLES E. MOYLAN, JR. (Retired, Specially Assigned), JJ.

WATTS, J.

This case involves the denial of a proposed amendment to the development plan for a multi-lot subdivision in Baltimore County, known as Longfield Estates. Appellant, HNS Development, LLC, filed with the Baltimore County Review Group (the "CRG")[1] a proposal to amend (the "amended plan") the original development plan for Longfield Estates, seeking to further subdivide and develop the property. Appellees, People's Counsel for Baltimore County and Greater Kingsville Civic Association, objected to the amended plan, and the CRG denied approval of the amended plan. Both appellant and appellees appealed the CRG's denial to the Baltimore County Board of Appeals (the "Board"). The Board found, pursuant to Baltimore County Code ("B.C.C.") § 22–47 (1978, 1988/89 Supp.), that the amended plan had been deemed approved through untimely action by the CRG, and remanded the matter to the Planning Board for a determination as to whether the amended plan conflicted with the Baltimore County Master Plan (the "Master Plan"). The Planning Board ultimately determined that the amended plan conflicted with the Master Plan, and the Board affirmed the Planning Board's decision. Appellant petitioned the Circuit Court for Baltimore County for judicial review. This appeal followed the circuit court's affirmation of the Board's decision.

---

1. Baltimore County Code § 22–57(a) (1978, 1988/89 Supp.), provides: "The CRG consists of the directors of the department of public works and office of planning and zoning or their designated representatives."

On appeal, appellant raised three issues [2] which we have consolidated and rephrased as follows:

 I. Whether the Board erred in finding the amended plan having been "deemed approved" pursuant to B.C.C. § 22–47 was subject to review under B.C.C. § 22–61(c) (1978, 1988/89 Supp.)?

 II. Whether the Board erred in finding that the amended plan conflicts with the Baltimore County Master Plan?

For the reasons set forth below, we answer both questions "no" and shall affirm the judgment of the Circuit Court for Baltimore County.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 26, 2004, appellant acquired the property at issue, Longfield Estates. Longfield Estates is an existing residential subdivision in the Kingsville area of Baltimore County. On February 17, 2005, appellant filed an amended plan seeking an amendment to the Longfield Estates II CRG Plan, which was originally approved in 1991.[3] Pursuant to the

---

**2.** Appellant raises the issues thus:

 I. Whether the Board of Appeals erred as a matter of law in failing to affirm the proposed CRG Plan Amendment which was approved by operation of law on account of the failure of Baltimore County, by and through the County Review Group, to act on the proposed amendment to the CRG Plan within the required 30 day period?

 II. Whether the Board of Appeals erred as a matter of law in denying the proposed CRG Plan Amendment due to a conflict with the Baltimore County Master Plan?

 III. Whether the Board of Appeals erred in relying on a finding by the Planning Board which was both legally faulty and unsupported by the record?

**3.** On May 10, 1990, the original developer, Longfield Estates Development Corporation ("original developer"), obtained approval for Phase I of a development plan for property located on Belair Road in Kingsville. At this time, a home owned by Ann Langenfelder was on the property.

After obtaining approval for Phase I of development, on November 8, 1990, the approval of Phase II was referred to the Planning Board due to an apparent conflict with the Master Plan of 1989–2000, relating to the scenic quality of the Langenfelder home. On January 17, 1991, the

amended plan appellant sought: (1) to place a dwelling on a portion of Parcel A; (2) a lot line adjustment combining the remainder of Parcel A with Lot 42; and (3) a subdivision of Lot 42 to obtain one additional lot.

Appellees objected to the amended plan. On February 17, 2005, a meeting notice was issued pursuant to the CRG process.[4] Per the notice issued on February 17, 2005, on

Planning Board issued a resolution finding that the development of nine lots of the plan for Phase II would conflict with the Master Plan, and therefore, the Planning Board recommended the CRG deny Phase II, as proposed. The Resolution also contained a finding that it was not in the public interest for the county to acquire the nine lots.

In May of 1991, the original developer submitted a revised plan for Phase II. On June 27, 1991, the Office of Planning and Zoning submitted a report to the CRG recommending the CRG approve the plan subject to conditions. The revised plan for Phase II was approved on June 27, 1991. The approved plan designated two scenic view sheds, and contained two relevant Notes: Notes 18 and 19. Note 18 states:

The Baltimore County Office of Planning & Zoning would not support future development on Lot 42 or Parcel "A." Any future subdivision of Lot 42 and/or Parcel "A" would be considered a conflict with the Master Plan as detailed by the Planning Board's decision. Lot 42 as shown on the revised CRG plan is designed in accordance with the Planning Board's action of Jan. 17, 1991, furthermore, the Office of Planning & Zoning supports and strongly encourages the applicant to seek a conservation easement to restrict future development on Lot 42 and Parcel A to permanently protect the integrity of the scenic view.

Note 19 states:

Longfield Estates Development Corporation and the Greater Kingsville Civic Association have entered into a Memorandum of Understanding Agreement with attached Declaration of Covenants and Restrictions for the development, dated June 27, 1991.

Both Lot 42, which contained the Langenfelder home, and Parcel A, were retained by Langenfelder. Although Note 18 encouraged Langenfelder to seek a conservation easement, to date, no conservation easement has been obtained. Lot 42 and Parcel A were exempted from both the Declaration of Covenants and Restrictions, and Memorandum of Understanding Agreement. In 1991, CRG approval became final, there was no appeal, and the original developer constructed two phases of Longfield Estates.

4. B.C.C. § 22-63 (1978, 1988/89 Supp.) provides that "[a]ny material amendment to an approved plan shall be reviewed and approved in the same manner as the original plan." Further, as the Board explained in its April 6, 2007, Opinion: "The CRG process was adopted in Baltimore County by Council Bill 56, 1982, and codified in the [B.C.C.], 1978, in

8

March 21, 2005, a pre-CRG meeting was held. On April 1, 2005, a CRG meeting was conducted, and at this meeting, the CRG denied approval of the amended plan in light of Note 18 of the 1991 CRG Plan and the finding of the Planning Board in 1991, that there was a conflict with the Master Plan that prohibited building on the two lots. On April 14 and 15, 2005, appellees, People's Counsel, and Greater Kingsville filed Notices of Appeal, respectively, to preserve their rights to a *de novo* hearing before the Board.[5] On April 26, 2005, appellant appealed the CRG's denial of the amended plan.

The Board held six days of public hearings on the appeals,[6] culminating in a public deliberation held on November 9, 2006. On April 6, 2007, the Board issued a final Opinion and Order, explaining that Baltimore County Charter § 603 provides that review by the Board is to be *de novo*, however, the scope of review is narrow: "The final action on a plan shall be presumed correct and the person aggrieved shall have the burden of persuasion to show that such action was arbitrary or capricious, procured by fraud, or otherwise illegal." B.C.C. § 22–61(c). In the Opinion, the Board addressed three issues:

 1. Whose appeal goes forward? When the CRG met, it denied the amendment, which would make this [appellant]'s appeal. However, [appellant] argues that be-

Sections 22–37, *et seq.* The CRG process [was] superseded [in 1992] by the development plan process in use today in B.C.C. Sections 32–4–101, *et seq.* However, any amendments to plans adopted using the CRG process were to 'be reviewed and approved in the same manner as the original plan.' (Section 32–4–262)." This requirement was changed by the passage of Bill No. 24–06 on March 17, 2006. Baltimore County Code § 32–4–262(2) provides: "Any material amendment to an approved residential Development Plan or plat shall be reviewed in accordance with this title, and with respect to that portion of the original plan or plat to which the amendment pertains, the amendment shall be reviewed for compliance with all current law . . . ."

5. Although the amended plan was denied by the CRG, appellees filed appeals because of "[appellant's] contention that the [CRG] did not hold a timely meeting and therefore the [amended plan] had been automatically approved."

6. The hearings were held on: October 19, 2005, January 31, 2006, February 15, 2006, May 17, 2006, May 24, 2006, and August 22, 2006.

cause the CRG did not meet within the timeframe specified by [B.C.C.], the [amended plan] became automatically approved which would make this case an appeal by the [appellees].

2. Does the doctrine of *res judicata* apply to this proposal and preclude consideration of two additional lots for Parcel A and Lot 42?

3. Should this case go back to the Planning Board for review of the Master Plan conflict?

The Board found, as to issue one, that "[t]he amendment to the plan was adopted for filing on February 17, 2005." The thirty day deadline was March 19, 2005, yet, the CRG meeting was not held until April 1, 2005, twelve days after the deadline.[7] The Board stated:

This Board finds that the County Code requirements regarding the time frames for the CRG process were very clear, and the CRG failed in its responsibility to either meet within the required timeframe or explain its failure to act within seven days. The County Code places the burden to act on the CRG and not on the Developer. Therefore, through its inaction and delayed meeting, the CRG in effect approved this amendment to the CRG plan, making this case an appeal from [appellees].[8]

---

7. B.C.C. § 22–56 (1978, 1988/89 Supp.) provides, in pertinent part:

(a) Within fifteen (15) days of the receipt of the plan and the necessary review fee, the department of public works shall review the plan for compliance with section 22–55 of these regulations; and if the plan is in compliance, the plan shall be accepted for filing and copies of the plan shall be forwarded to the county review group (CRG) for its action....

(b) The department of public works shall schedule a meeting of the CRG which shall occur no earlier than fifteen (15) days and no later than thirty (30) days after the plan has been accepted as filed.

8. B.C.C. § 22–47 provides:

If any county agency fails to act on any plan or plat submitted in accordance with these regulations within the prescribed time, the plan or plat shall be deemed to have been approved by the agency unless the failure to act has been excused by the administrative

As to the second issue, the Board found that the doctrine of *res judicata* does not apply in this case. Although appellees argued that "the issues regarding Parcel A and Lot 42 were decided in 1991," the Board agreed. with appellant that in *Whittle v. Bd. of Zoning Appeals,* 211 Md. 36, 44, 125 A.2d 41 (1956), the Court of Appeals stated, "the doctrine of *res judicata* has been held not to be applicable where the earlier decision was made not by a court of record, but by a board of zoning appeals, an administrative agency" and appellant pointed out that the "initial CRG case was never litigated," therefore, *res judicata* does not apply.

As to the third issue, the Board found in pertinent part:

[B.C.C.] Section 22–59 requires that the CRG refer proposed plans to the Planning Board in certain circumstances, including "when the proposed plan conflicts with the Master Plan."

\* \* \*

At the heart of this case is the question of what Note 18 means and whether any development of these two lots would be a conflict with the Master Plan. But, this Board finds that a crucial piece of evidence is missing as a result of the CRG's inaction. The question of whether the proposed amendment is in conflict with the County Master Plan was never put before the Planning Board, as required by Section 22–59. Without that input, this Board is unable to move forward. In this respect, we find that the CRG was arbitrary and capricious in its failure to act in a timely fashion and by not referring the matter to the Planning Board as required by law.

This Board therefore votes unanimously to remand this proposed [amended plan] to the CRG for referral to the Planning Board for them to decide whether it conflicts with the Baltimore County Master Plan. This Board will retain

officer, in writing, no later than seven (7) days after the expiration of the prescribed time.

jurisdiction and will decide the merits after the Planning Board reaches its decision.

Appellees filed motions for reconsideration on May 2, 2007, and August 22, 2007. These motions were denied on August 10, 2007, and September 7, 2007, respectively.

Following remand of the case, on February 20, 2008, the Director of the Planning Board, Arnold F. 'Pat' Keller, III ("Director Keller"), submitted a report to the Planning Board finding that the amended plan conflicted with the Master Plans of 1989–2000 and 2010. On April 17, 2008, the Planning Board adopted Director Keller's report finding a conflict with the Master Plans and found that no further subdivision/development or future development on Lot 42 and/or Parcel A would be permitted. The Planning Board forwarded its decision to the County Council on April 28, 2008 and the County Council took no action. On April 30, 2008, the Planning Board's findings were sent to the Board, as the Board retained jurisdiction under the April 6, 2007, Order.

On June 26, 2008, appellant requested a hearing before the Board. On December 17, 2008, the Board conducted a hearing, and on February 5, 2009, appellant filed a document titled, "Memorandum of Petitioner Summary of Petitioner's Position" with the Board. On February 5, 2009, appellees also filed Post–Remand Hearing Memoranda. On July 1, 2009, the Board issued an Order affirming the Planning Board's decision that the amended plan conflicts with the 2010 Master Plan. In an Opinion accompanying the Order of July 1, 2009, the Board explained:

> As a result of the Remand by the [Board], the question of a possible conflict of the Petitioner's proposed amendment with the Baltimore County Master Plan 2010 was taken up by the Planning Staff. They recommended in their report to the Planning Board of February 20, 2008 that there be a finding, that the proposed amendments to the original along with the CRG approval were in conflict with the Baltimore County Master Plan. The Planning Board met and adopted

the Staff Report, and confirmed that a conflict with the Master Plan 2010, did in fact, exist. . . .

It should be noted that the County Council took no action to over-ride the conclusion of the Planning Board.[9]

This Board holds that the case at bar is being heard by us on a *de novo* basis, as a result of the various appeals filed by the parties. As such, prior actions and determinations alleged to have occurred by operation of law no longer stand.

* * *

Nevertheless, having received the matter *de novo*, our referral for the Planning Board determination as to Master Plan conflict was essential to a final decision. The resultant finding of the actual existence of such a conflict can not, under the CRG Rules, be ignored. Therefore, once the Planning Board has now determined that such a conflict with the 2010 Master Plan does in fact exist, and no action having been taken to the contrary by the County Council, it is clear that the requested amendment to the original CRG Plan in this matter cannot be allowed.

On July 30, 2009, appellant filed a Petition for Judicial Review in the Circuit Court for Baltimore County. On April 13, 2010, the circuit court conducted a hearing on the matter, and on April 30, 2010, the circuit court issued an Order and accompanying Opinion, affirming the decision of the Board and of the Planning Board.[10] On May 28, 2010, appellant

---

9. Pursuant to B.C.C. § 22–60(c) (1978, 1988/89 Supp.), the Planning Board's decision is binding unless overruled by the County Council: "Unless the decision of the planning board on an issue referred to it pursuant to section 22–59(a)(1) is overruled by action of the county council, any decision of the board on an issue referred to it pursuant to section 22–59(a) is binding upon the CRG and shall be incorporated as a part of the CRG final action on a plan."

10. Although we review this case by examining the action of the agency, and not the circuit court as described, *infra* Standard of Review, we shall summarize the circuit court's holding. In the circuit court's Opinion, the circuit court rejected appellant's argument that the Board

noted a timely appeal. Additional facts will be set forth in this opinion as necessary to resolve the questions raised on appeal.

## STANDARD OF REVIEW

When we review the final decision of an administrative agency, such as the Board of Appeals, we look "through the circuit court's and intermediate appellate

---

erred in finding that the amended plan conflicted with the Master Plan stating:

> [B.C.C.] 22–60(c) provides, that "Unless the decision of the planning board on an issue referred to it pursuant to section 22–59(a)(1) is overruled by action of the county council, any decision of the board on an issue referred to it pursuant to Section 22–59(a) is binding upon the CRG and shall be incorporated as a part of the CRG final action on a plan." [ (Bill No. 56, 1982, § 2; Bill No. 35, 1988, § 2) ]
>
> It is clear that the Planning Board, and therefore, the [Board] as well based their determination of a conflict based on evidence contained in the record. As stated earlier, Note 18 becomes the critical language in dispute. Note 18 states, that "The Baltimore County Office of Planning & Zoning would not support future development on Lot 42 or Parcel "A." Any future subdivision of Lot 42 and/or Parcel "A" would be considered a conflict with the Master Plan as detailed by the Planning Board's decision." Accordingly, reasoning minds could most definitely determine this language to support the finding of a conflict with the Master Plan. Furthermore, Planning Director Pat Keller's February 20, 2008 report provides detailed reasons to support a conflict. The report reviews the elements of the Master Plan to "protect ... sensitive environmental areas" and to "[P]rotect and maintain the [rural residential] areas character." Applied to the present land, the report states that "the scenic quality of the Langenfelder Home was identified as worthy of preservation. This scenic quality is a Kingsville landmark known to residents as well as motorists passing though [sic] the area and is as viable today as it was in 1991." The report also discusses the land as an [sic] historic and cultural resource. The Planning Board adopted this report. Therefore, the Board, by upholding the Planning Board decision adopted the report. Accordingly, there is evidentiary support of a conflict with the Master Plan.

The circuit court rejected appellant's second argument, that the amended plan was approved by operation of law for CRG's failure to act on the amended plan within the required 30 day time-frame, stating:

> [Appellant] did not show or even allege that any prejudice occurred from a twelve day delay in a matter that was filed five years ago. Additionally, People's Counsel filed a cross-appeal, so the case was heard by the [Board] either way. Finally, the 2007 [Board] remand made this twelve day delay in 2005 moot.

court's decisions, although applying the same standards of review, and evaluate[ ] the decision of the agency." Judicial review of administrative agency action is narrow. The court's task on review is not to substitute its judgment for the expertise of those persons who constitute the administrative agency.

*People's Counsel for Baltimore County v. Loyola College in Md.,* 406 Md. 54, 66–67 [956 A.2d 166] (2008) (footnote omitted) (citations omitted) (alteration in original). This Court in *Umerley v. People's Counsel,* 108 Md.App. 497, 503–04 [672 A.2d 173], *cert. denied,* 342 Md. 584 [678 A.2d 1049] (1996) explained this Court's standard of review of an agency's decision in three steps:

1. First, the reviewing court must determine whether the agency recognized and applied the correct principles of law governing the case. The reviewing court is not constrained to affirm the agency where its order "is premised solely upon an erroneous conclusion of law."

2. Once it is determined that the agency did not err in its determination or interpretation of the applicable law, the reviewing court next examines the agency's factual findings to determine if they are supported by substantial evidence, *i.e.,* by such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. . . .

3. Finally, the reviewing court must examine how the agency applied the law to the facts. This, of course, is a judgmental process involving a mixed question of law and fact, and great deference must be accorded to the agency. The test of appellate review of this function is "whether . . . a reasoning mind could reasonably have reached the conclusion reached by the [agency], consistent with a proper application of the [controlling legal principles]."

[*Comptroller v. World Book Childcraft,* 67 Md.App. 424,] 438–39 [508 A.2d 148, *cert. denied,* 307 Md. 260, 513 A.2d 314 (1986) ] (citations omitted).

Also, unlike our review of a trial court's judgment, we will only uphold the decision of an agency on the basis of the

agency's reasons and findings. *United Steelworkers of America AFL–CIO Local 2610 v. Bethlehem Steel Corp.*, 298 Md. 665, 679, 472 A.2d 62 (1984). We may search the record for evidence to support a trial court's judgment; and we may sustain that judgment for a reason plainly appearing on the record, even if the reason was not relied on by the trial court. *Id.* But we may not uphold an agency's decision "unless it is sustainable on the agency's findings and for the reasons stated by the agency." *Id.*

(Footnote omitted). In *Marzullo v. Kahl,* the Court of Appeals explained:

[A] 'court's task on review is not to " ' "substitute its judgment for the expertise of those persons who constitute the administrative agency." ' " Even with regard to some legal issues, a degree of deference should often be accorded the position of the administrative agency. Thus, an administrative agency's interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts.

366 Md. 158, 172 [783 A.2d 169] (2001) (citations omitted).

## DISCUSSION

## I. THE DEEMED APPROVAL

### A. The Parties' Contentions

Appellant contends that because the CRG failed to act in a timely manner in approving the amended plan, the plan is deemed approved, by "operation of law," pursuant to B.C.C. § 22–47, and as a result may not be set aside under B.C.C. § 22–61(c) or any subsequent review.[11] Appellant argues that

---

11. Appellant also argues that the area on which he proposed to build is lot 54, a lot not covered by Note 18. Appellees counter that the "argument that there was confusion about the lots involved in the [amended plan] is another smokescreen. There has never been any genuine dispute that Lot 42 and Parcel A make up the relevant area. They are the tracts targeted by CRG plan Note 18 protection." We concur. In appellant's February 5, 2009, Memorandum to the Board, appellant argued:

"[t]he [CRG] is required by law to conduct a hearing on a filed and accepted CRG plan within thirty (30) days of the acceptance" of the Plan for filing pursuant to B.C.C., § 22–56(b) and, in this case, the CRG failed to do so. Appellant maintains that due to the untimeliness of the CRG action, "under the plain meaning of [B.C.C.] § 22–47, the [amended plan] must be 'deemed to have been approved.'" Appellant contends that because the amended plan was approved by "operation of law," it cannot be found to be arbitrary or capricious, procured by fraud, or otherwise illegal under B.C.C. § 22–61(c).

In contrast, appellees respond that the failure of the CRG to act within the thirty (30) day time limit prescribed in B.C.C. § 22–56(b) does not "immunize" appellant's amended plan "from Board review for arbitrariness, capaciousness, and illegality" under B.C.C. § 22–61(c).[12] Appellees maintain that appellant has waived the argument that the amended plan's "'deemed approval' immunized the plan from review for arbitrariness, capriciousness, and illegality," due to appellant's failure to make this argument at the 2005–2006 Board proceedings or at the 2008 post-remand hearing. Relying on *Heft v. Maryland Racing Comm'n*, 323 Md. 257, 273–74, 592 A.2d 1110 (1991), appellees assert that "a person may not obtain

---

While it is true that a subdivision is being proposed for Lot 42, there is no subdivision proposed for Parcel A, only a building permit.

\* \* \*

Denial of Petitioner's building permit on Parcel A and denial of a subdivision of Lot 42 denies the Petitioner rights under the County Code.

As such, rather than raise the issue that Note 18 does not pertain to the area affected by the amended plan, appellant conceded that the proposed development would occur on Lot 42 and Parcel A.

12. Appellees raise three additional arguments on appeal: (1) that appellant's amended plan application is disqualified for failure to apply for or secure the prerequisite zoning approval; (2) that the Board made two jurisdictional mistakes when it remanded the case to the Planning Board in 2007:(a) the Board retained jurisdiction; and (b) the Board remanded the case directly to the Planning Board, rather than the CRG; and (3) that this case is barred by the doctrine of *res judicata*. Given that we answer both questions raised by appellant in the negative, it is not necessary that we reach these issues.

judicial review of a matter when he or she failed to properly raise the matter before the administrative agency."

If not waived, appellees maintain that B.C.C. § 22–47 and § 22–51 (1978, 1988/89 Supp.) must be read together, and B.C.C. § 22–51, provides, in pertinent part: "In addition to compliance with these development regulations, all development shall comply with all other applicable laws, rules, or regulations of the county." Based on this language, appellees contend that "the County Council did not intend the provision for 'deemed approval' to harbour, shelter, or shield an illegal re-subdivision." Appellees respond that finding that a twelve (12) day delay in the process provided appellant with approval and effective immunity from review would in effect deny appellee[s] the appeal rights guaranteed by the [B.C.C.] § 22–61 (1978, 1988/89 Supp.), County Charter §§ 602–603, and Express Powers Act, Md. Ann.Code Art. 25A, § 5(U). Apx. 34, 45, 48. Finally, appellees contend that the amended plan conflicts with the Master Plan and is illegal.

## B. Analysis

In sum, although set forth more comprehensively above, appellant argues that because the amended plan was deemed approved pursuant to B.C.C. § 22–47, its approval is set in stone and not subject to further review. We disagree. First, appellant has waived the argument that the deemed approval caused by the CRG delay immunizes the amended plan from Board review under B.C.C. § 22–61(c), as appellant did not raise this issue before the Board. Secondly, a plain reading of the relevant provisions of the B.C.C. does not support appellant's position. Thirdly, the legislative history of B.C.C. § 22–47 does not support the conclusion that further review of a matter deemed approved is foreclosed. Finally, relevant case law reveals that the deadline for CRG approval in the B.C.C. does not create a substantive approval barring further review.

### (1) Waiver

Appellant failed to raise the issue of the amended plan being immunized from review at the 2005–2007 proceedings or

post-remand in 2008. As such, the Board neither examined nor resolved the issue in its July 1, 2009 Opinion. As this Court explained in *Chertkof*, 43 Md.App. at 17–18, 402 A.2d 1315:

It is not our function as an appellate court to consider issues not raised, considered or decided in the court below. Our review, particularly in appeals from administrative bodies, must be limited to the determination based on the record. We must necessarily limit our consideration to whether the agency had before it substantial evidence to support its conclusions, and whether these conclusions were arbitrary, illegal or capricious. Considering the state of the record in this case and in deference to Rule 1085, **we will not review the new issue raised by the appellant in this appeal.** The record is more than sufficient to establish that the Board of Review had before it substantial evidence to support its conclusions, and we find nothing illegal, arbitrary or capricious in its actions.

(Emphasis added).

Between October 2005, and August 2006, the Board held six days of public hearings on the CRG's denial of the amended plan. This issue was not raised by appellant before the Board at that time. In the Board's Opinion of April 6, 2007, the Board phrased the issue as to the effect of the deemed approval of the amended plan as follows:

Whose appeal goes forward? When the CRG met, it denied the amendment, which would make this [appellant]'s appeal. However, [appellant] argues that because the CRG did not meet within the timeframe specified by [B.C.C.], the [amended plan] became automatically approved which would make this case an appeal by [appellees].

At that time, appellant raised the issue of "who bore the burden to show the amended plan was arbitrary, capricious, or illegal pursuant to B.C.C. § 22–61(c)," not the issue of whether the plan was immunized from review under B.C.C. § 22–61(c) because the plan was deemed approved by the CRG's delay. In its April 6, 2007 Opinion, the Board found that "through its

inaction and delayed meeting, the CRG in effect approved this amendment to the CRG plan, making this case an appeal from [appellees]." The Board made no finding as to whether or not the amended plan was immunized from review under B.C.C. § 22–61(c) as appellant did not raise the issue.

In the decision of April 6, 2007, the Board remanded the matter to the Planning Board for a determination as to whether the amended plan conflicted with the Master Plan. There is no indication that appellant raised the immunization argument before the Planning Board on remand.

Similarly, appellant failed to raise the immunization argument when requesting a hearing before the Board in 2008, at the December 17, 2008 hearing, or at any time thereafter before the Board. On June 26, 2008, appellant submitted a letter to the Board requesting a hearing. In this letter,[13] appellant did not contend that the amended plan was immune from review under B.C.C. § 22–61(c). At the December 17, 2008, hearing, appellant did not argue that the plan was immune from review, instead appellant argued, among other points, that the Board erred in remanding the matter to the Planning Board:

[APPELLANT'S COUNSEL]: The Board really should never have remanded it to the planning board to begin with. The second argument is that the planning board, like the CRG failed to undertake a timely and proper review, which they were required by law to do.

* * *

---

13. In the letter, appellant stated:

 Please accept this letter as a follow up to the Planning Board's ruling on the above-referenced matter. As you recall, the Board of Appeals remanded the case to the Planning Board to decide whether the proposed amendment to the CRG Plan conflicted with the Baltimore County Master Plan. In remanding the case, the Board retained jurisdiction in order to decide the merits of the case following the Planning Board's decision. In light of the Planning Board's recent ruling on the matter, we respectfully request that the case be set in for oral argument before the Board as soon as possible. The Board has received testimony and memoranda already, but due to the lapse of time since last fall when the hearing concluded, some additional argument is desired.

[The CRG] also didn't act in a timely manner. And by operation of law, their entire decision then affirmed the plan.

Once that was done, the Board actually had in front of it an affirmed plan, and that should have been the end of the matter, because the Board actually—there's nothing in the code that says the Board of Appeals shall remand to the planning board.

Prior to the decision of July 1, 2009, on February 5, 2009, appellant submitted the document, "Memorandum of Petitioner Summary of Petitioner's Position" to the Board. In the February 5, 2009 Memorandum, appellant did not raise the argument that review of the amended plan was foreclosed under B.C.C. § 21–61(c). In its Memorandum, contrary to arguing that the plan was immunized from review under B.C.C. § 22–61(c), appellant endorsed the availability of an appeal, stating:

Once the Board determined that by operation of law the Plan was approved then no further review was required. The only way to overturn the decision would be to show that filing was illegal or fraudulent. There was no allegation that either occurred.

The Planning Board like the CRG failed to consider in a timely manner the question posed by the Board. The [B.C.C.] protects the property owner or developer from undue delays in decisions. After the matter was presented to the Planning Board on February 21, 2008, the Planning Board failed to consider it in a timely manner by not responding to the county council until April 28, 2008. By operation of law no master plan conflict was determined.

\* \* \*

Any person aggrieved or feeling aggrieved by final action on a plan is entitled to appeal to the County Board of Appeals. Unlike appeals under the current development review process in Baltimore County, appeals from CRG action are heard *de novo*.

By not raising the immunization issue before the CRG, the Planning Board and the Board, appellant has failed to preserve the issue for appellate review. *Chertkof,* 43 Md.App. at 17, 402 A.2d 1315 ("We will not review the new issue raised by the appellant in this appeal.").

### (2) The Baltimore County Code ("B.C.C.")

Alternatively, a plain reading of the relevant sections of the B.C.C. does not support the conclusion that further review of a matter deemed approved pursuant to B.C.C. § 22–47, is foreclosed by law. In this case, to be sure, there is no dispute that the CRG action was untimely. The proposed amended plan was accepted for filing on February 15, 2005, and the CRG meeting was held on April 1, 2005, twelve (12) days after the thirty (30) day time frame provided for in B.C.C. § 22–56(b).

B.C.C. § 22–47 provides:

If any county agency fails to act on any plan or plat submitted in accordance with these regulations within the prescribed time, the plan or plat shall be deemed to have been approved by the agency unless the failure to act has been excused by the administrative officer, in writing, no later than seven (7) days after the expiration of the prescribed time.

Again, it is undisputed in this case that the delay was not excused by an administrative officer, in writing, within seven days after the expiration of the thirty (30) day time frame. Therefore, the proposed amended plan was properly "deemed to have been approved by the agency," pursuant to B.C.C. § 22–47.

Contrary to appellant's argument, however, B.C.C. § 22–47 contains no language indicating that the plan is approved by "operation of law." B.C.C. § 22–47 simply states the plan shall be deemed to have been approved by the agency, no more than that. Although the amended plan was approved pursuant to B.C.C. § 22–47, B.C.C. § 22–61(a) provides for an appeal of the CRG's final action to the Board by any person

aggrieved or feeling aggrieved by final action within thirty (30) days of such final action. B.C.C. § 22–61(c) provides: "The final action on a plan shall be presumed correct and the person aggrieved shall have the burden of persuasion to show that such action was arbitrary or capricious, procured by fraud, or otherwise illegal." Just as B.C.C. § 22–47 contains no language whatsoever stating that the plan is approved by "operation of law," there is no language in the statute indicating that the plan shall not be reviewed pursuant to § 22–61(a) and § 22–61(c) after a deemed approval. Based on a plain reading of B.C.C. § 22–47, § 22–61(a) and § 22–61(c), an appeal of a plan deemed to have been approved pursuant to B.C.C. § 22–47 is not precluded under the statute.

### (3) Legislative History

The legislative history of B.C.C. §§ 22–37 through 22–104, enacted in 1982, is contained in County Council of Baltimore County, Maryland, Legislative Session 1982, Bill No 56–82,[14] April 5, 1982. Albeit briefly stated, Bill No. 56–82 provides, in an introductory paragraph, that it is an Act concerning development regulations:

> For the purposes of repealing the subdivision regulations of the County and enacting new development regulations to govern development of all land in the County; defining terms; **providing for the process of development approval;** imposing certain requirements on developers; providing certain standards for all development; providing for the adoption of additional standards for development; and generally relating to the regulation of the development of land in Baltimore County.

(Emphasis added).

As set forth above, Bill No 56–82 specifically states that one of the purposes of the Bill is to provide for the "process of

---

14. This Bill added §§ 22–37 through 22–104, 105 inclusive under the new title "Article IV. Development Regulations of Baltimore County" Title 22—Planning, Zoning, and Subdivision Control, B.C.C., 1978, 1980 Supplement.

development approval." The legislative history gives no indication that a purpose of the Bill is to override sections of the statute providing for appeals in the development approval process. Additionally, the legislative history does not state that a plan may be approved by "operation of law." Simply put, there is nothing in the legislative history to suggest that development plans which are deemed approved pursuant B.C.C. § 22–47 are to be treated differently in the development approval and review process than plans approved through timely action by the CRG.

### *(4) Relevant Case Law*

This Court in *Art Wood Enters. v. Wiseburg Cmty. Ass'n*, 88 Md.App. 723, 729, 596 A.2d 712 (1991), *cert. denied*, 325 Md. 397, 601 A.2d 130 (1992), held that CRG approval is merely one stage in the land development and approval process. We explained that the B.C.C. authorizes the CRG to take any of three actions when analyzing a proposed development plan. The CRG can: (1) take final action on the plan, (2) refer the proposed plan to the Planning Board pursuant to B.C.C. § 26–207, or (3) continue the meeting to a later date "in order to receive additional information or to resolve any development matter raised at the initial meeting regarding the plan." *Id.* at 728–29, 596 A.2d 712; B.C.C. § 22–206(b). We explained that these actions must be interpreted in light of B.C.C. § 26–203(a), which provides:

[T]he plan shall set forth an *informative, conceptual, and schematic representation* of the proposed development in a clear and legible manner by means of maps, graphs, charts, or other written or drawn documents so as to enable the county and all reviewing agencies an opportunity to make reasonably informed decisions regarding the development.

*Id.* (footnote omitted) (emphasis in original). This Court further stated:

The language of B.C.C. § 26–203(a) makes it clear that **CRG approval is merely one stage** (and an early one at that) of the land development review and approval process which takes a proposed development from its planning

stages to its final form. As the Board stated in its opinion on the CRG's approval of the Plan:

[a]t the CRG stage, the developer need concern himself only with generalities and not specifics of his proposed development. He may be granted approval of the conceptual plans, but numerous agency permits, inspections, and approvals will follow . . .

Thus, the use of the term "final action on the plan" in B.C.C. § 26–206(b)(1) cannot be interpreted to mean that the plan on which the CRG acts need be in finished form, or that no additional review or more detailed information, even on subjects generally addressed in the development plan, will be necessary in subsequent stages of the development review and approval process.

*Id.* at 729–30, 596 A.2d 712 (emphasis added).

Although the facts in *Art Wood* do not involve the deemed approval of a development plan, the case is instructive as this Court examined the CRG approval process under the B.C.C. and explained that CRG approval is "merely one stage . . . of the land development review and approval process which takes a proposed development from its planning stages to its final form." 88 Md.App. at 729, 596 A.2d 712. Given that the plan, at this stage, is not anticipated to be in finished form, it would be impossible to find that a plan deemed approved pursuant to B.C.C. § 22–47 is exempt from further review under the B.C.C.

Thus, it is clear that whether reviewing the plain language of B.C.C. §§ 22–47 and 22–61(a) and (c), the legislative history of the statutes, or relevant case law, review under B.C.C. § 22–61(c) is indeed permitted of a development or subdivision plan deemed approved pursuant to B.C.C. § 22–47.

## II. THE MASTER PLAN CONFLICT

Appellant contends that the Board erroneously denied approval of the amended plan based on faulty legal analysis of master plan conflicts. Appellant's theories as to the Board's error include the following premises: (1) The Master Plan is a

guide and not a rule; (2) B.C.C. §§ 22–37 and 22–38 provide a basis for the amended plan to be deemed approved; and (3) B.C.C. § 22–18 sets forth a specific process to be followed in the event of a master plan conflict, and the Board's failure to follow that process constituted an impermissible taking of the property. Appellant also argues that the Board's decision is not supported by substantial evidence. For the reasons below, we reject each argument.

### A. *The Master Plan: Guide or Rule*

Appellant contends that the Master Plan is a guide not a rule. Relying on *People's Counsel for Baltimore County v. Beachwood I Ltd. P'ship,* 107 Md.App. 627, 670 A.2d 484 (1995), *cert. denied,* 342 Md. 472, 677 A.2d 565 (1996), and *Mayor and Council of Rockville v. Rylyns Enters., Inc.,* 372 Md. 514, 814 A.2d 469 (2002), appellant maintains that case law interprets "local master plans not as regulations or ordinances but rather as guides in the promulgation of regulations and zoning classifications."

Appellant relies on language in the Baltimore County Master Plans of 1989–2000, and 2010, for the proposition that the Master Plan is merely a guide. The Baltimore County Master Plan 1989–2000, adopted by the County Council in 1990 stated, in part:

> This Master Plan shall serve as a guide to Baltimore County Government as it implements plans for the development of this County. The propositions promulgated in this Master Plan constitute recommendations and guidelines concerning how this County should grow and develop as we approach the 21st Century.

> In the event the within contain recommendations guidelines and Land Use Maps differ from a Comprehensive Zoning Map adopted by the County Council, the Comprehensive Zoning Map shall take precedence and shall prevail.

Baltimore County Master Plan 1989–2000, p. 7 (adopted February 5, 1990). The Baltimore County Master Plan 2010,

adopted by the Baltimore County Council in February 2000, states, in pertinent part:

The statements of *Master Plan 2010* are intended to guide the Council in this role.

. . . .

The County Executive and County Council have recognized the Master Plan as an important advisory tool for ensuring that the growth of Baltimore County is managed in an orderly and rational manner. Many of the activities of government encourage conformance with the master plan,

. . .

Baltimore County Master Plan 2010, p. 6, 8 (adopted February 22, 2000).

In contrast, relying on B.C.C. § 22–59 (1978, 1988/89 Supp.) and § 22–60, appellees respond that the Master Plan is not just a guide, that "[B.C.C. § 22–59 and § 22–60] commanded the CRG to refer [M]aster [P]lan conflict issues to the Planning Board, set up a procedure for Planning Board review, and required the CRG to incorporate the Planning Board decision in its final action unless the County Council chose to overrule the Planning Board." Relying on *Bd. of County Comm'rs v. Gaster*, 285 Md. 233, 246–50, 401 A.2d 666 (1979); *Coffey v. Md.–Nat'l Cap. P. & P. Comm'n*, 293 Md. 24, 30–31, 441 A.2d 1041 (1982) and *Md.–Nat'l Cap. P. & P. Comm'n v. Wash. Bus. Park Assocs.*, 294 Md. 302, 313–16, 449 A.2d 414 (1982), appellees contend that: "While the master plan is often described as a guide in zoning reclassification and special exception cases, the situation is different with development or subdivision plans where there is a direct statutory provision providing for a decision upon a master plan conflict. In this situation, the master plan is binding."

On this issue, we agree with the position enunciated by appellees. Appellant relies on *Rylyns Enters.*, 372 Md. 514, 814 A.2d 469, *Beachwood I*, 107 Md.App. 627, 670 A.2d 484, and *People's Counsel for Baltimore County v. Webster*, 65 Md.App. 694, 501 A.2d 1343, *cert. denied*, 306 Md. 70, 507 A.2d

184 (1986), cases involving zoning regulations in which Maryland appellate courts have found local master plans to be guides. These cases are distinguishable as the cases involve zoning matters in which there was no requirement under the county code or charter that the zoning plan conform to the master plan. We shall briefly examine the cases relied on by appellant to clarify the distinction in the case law in matters pertaining to local master plans.

In *Beachwood I*, this Court reversed the County Board's decision to grant a Petition for a Zoning Reclassification submitted by the developer, Beachwood. 107 Md.App. 627, 675, 670 A.2d 484. In *Beachwood I*, the Baltimore County Council reclassified the zoning of Beachwood's land to D.R. 1, however, the County Board, on petition by the developer, reclassified the property as D.R. 3.5. 107 Md.App. at 636, 670 A.2d 484. Appellants argued that there was no showing before the County Board of a mistake or error in the zoning classification originally made by the County Council. Beachwood argued that the County Council's zoning classification did not comply with the local master plan. *Id.* at 657, 670 A.2d 484. In affirming the zoning classification of the County Council, we explained that "there is no requirement that a comprehensive zoning plan must conform to the recommendations of an applicable master plan" and "[a]s we have said, a master plan is only a guide and is not to be confused with a comprehensive zoning, zoning map or zoning classification." 107 Md.App. at 657, 670 A.2d 484 (citing *Howard County v. Dorsey*, 292 Md. 351, 363, 438 A.2d 1339 (1982); *Pattey v. Bd. of County Comm'rs*, 271 Md. 352, 360, 317 A.2d 142 (1974)).

In *Webster*, this Court upheld the County Board's affirmation of the Zoning Commissioner's grant of a petition for a special exception required for a proposed project. 65 Md.App. at 696, 501 A.2d 1343. Specifically, this Court addressed whether "the Baltimore County Master Plan 1979–1990, as amended on January 5, 1981, prohibit[ed] the use of appellee's property for a new office building permitted within its R–C

zoning classification?" [15] 65 Md.App. at 695, 501 A.2d 1343.
We held that a master plan is a guide when executing the
zoning process, stating:

> This charter language is not vague or ambiguous and evi-
> dences the clearest intent of its framers. That the master
> plan was to serve as a guide to the County Council in its

15. This Court began by explaining the history of the Baltimore County
Master Plan:

> Article V, Subdivision 6, of the Baltimore County Charter (1978 ed.,
> 1984 Supp.) creates the Office of Planning and Zoning. The office is
> directed by § 522.1 of that Charter to plan for the development of the
> county, including the preparation of a master plan, a zoning map,
> subdivision regulations, and zoning rules and regulations. Section
> 523(a) of the Charter provides that the master plan shall set forth
> comprehensive objectives, policies, and standards to serve as a guide
> for the development of the county and § 523(b) states that the zoning
> maps are to be consistent with the master plan. Under § 523, the
> County Council, upon receipt of the master plan and zoning maps,
> and the rules and regulations, is empowered to accept or modify
> them and then adopt them by resolution.
>
> Sections 522.1 and 523 of the Charter were adopted by the County
> Council in 1978, approved by the voters of the county, and became
> effective December 8, 1978. The Charter Revision Commission
> which proposed these charter amendments commented on the pro-
> posed § 523 in its report filed on March 14, 1978:
>
>> This section number corresponds to an existing number in the
>> Charter, but the text is all new. Because the master plan is a basic
>> document which should serve as a guide to orderly development in
>> the County, the Commission recommends that a broad definition of
>> it be given in the Charter. The Commission recommends that the
>> County Council alter the Master Plan as necessary, then adopt it by
>> resolution. It is not the intent of the Commission that all actions in
>> the County should automatically be required to conform with every
>> detail of the master plan because of this resolution. It would be up
>> to the Council to define any enforcement mechanisms by legislative
>> act. However, the Commission does want the development of a
>> Master Plan to which the Council can and will make a commit-
>> ment. The Council then can enact a zoning map consistent with the
>> master plan, as provided in subsection 523(b), and the master plan
>> will provide a reference document Council members can depend
>> upon when they must resist pressures to draw zoning maps to
>> conform with transient political demands.
>
> Pursuant to § 522. 1, the Office of Planning and Zoning prepared a
> master plan, the Baltimore County Master Plan 1979–1990, which
> was accepted by Council resolution on November 19, 1979. The
> master plan was amended on January 5, 1981 by Council Resolution
> 2–81 adopting the Towson Town Center Plan (the Towson Plan).

*Id.* at 698–99, 501 A.2d 1343 (footnote omitted).

promulgation of the maps and regulations when executing the zoning process is patent from the resolution of the Council in adopting the master plan. . . . This has been the generally accepted role of the master plan in this context. As we noted in *Floyd v. County Council of P.G. Co.*, 55 Md.App. 246, 258–59, 461 A.2d 76 (1983):

> [I]t is commonly understood, in Maryland and elsewhere, that Master Plans are guides in the zoning process. *Chapman v. Montgomery County Council*, 259 Md. 641, 271 A.2d 156 (1970); *Board of County Comm'rs. for Prince George's County v. Edmonds*, 240 Md. 680, 215 A.2d 209 (1965); see *Montgomery County v. Woodward & Lothrop, Inc.*, 280 Md. 686, 376 A.2d 483, *cert. denied*, 434 U.S. 1067 [98 S.Ct. 1245, 55 L.Ed.2d 769] (1977) (Master Plan a guide, not a straitjacket); *Kanfer v. Montgomery County Council, supra* [35 Md.App. 715, 733, 373 A.2d 5, *cert. denied*, 281 Md. 741 (1977) ] (plan a "prophecy" as to future development). Master Plan guidelines are mandatory only if an ordinance so provides. *Cf. Coffey v. Md.-Nat'l. Cap. Park & Pl [anning ] Comm'n.*, 293 Md. 24, 441 A.2d 1041 (1982) (subdivision case); *Board of County Comm'rs. of Cecil County v. Gaster*, 285 Md. 233, 401 A.2d 666 (1979).

*See also Md.-Nat'l Cap. P. & P. v. Wash. Bus. Pk.*, 294 Md. 302, 449 A.2d 414 (1982).

*Id.* at 702–03, 501 A.2d 1343.

In *Rylyns Enters.*, a case from Montgomery County, the Court of Appeals affirmed this Court's holding "that the municipality's imposition, at the insistence of the County, of a condition limiting the use of the newly annexed property more restrictively than allowed by the City zoning ordinance for the zoning district in which the property was placed was tantamount to improper conditional zoning." 372 Md. at 521, 814 A.2d 469. The Court of Appeals, however, explained:

> [Master] Plans are long term and theoretical, and usually contain elements concerning transportation and public facilities, recommended zoning, and other land use recommenda-

tions and proposals. Zoning, however, is a more finite term, and its primary objective is the immediate regulation of property use through the use of use classifications, some relatively rigid and some more flexible. We repeatedly have noted that plans, which are the result of work done by planning commissions and adopted by ultimate zoning bodies, are advisory in nature and have no force of law absent statues or local ordinances linking planning and zoning. Where the latter exist, however, they serve to elevate the status of comprehensive plans to the level of true regulatory device. In those instances where such a statute or ordinance exists, its effect is usually that of requiring that zoning or other land use decisions be consistent with a plan's recommendations regarding land use and density or intensity.

372 Md. at 529–31, 814 A.2d 469 (footnotes omitted) (citations omitted).

### *(1) Charter Counties*

Prince George's County, Wicomico County, Montgomery County, and Baltimore County are charter counties. *Loyola College,* 406 Md. at 70–71, 956 A.2d 166 ("Baltimore County is a charter county pursuant to Article XI–A of the Maryland Constitution."); *United Parcel Serv., Inc. v. People's Counsel for Baltimore County,* 336 Md. 569, 581, 650 A.2d 226 (1994). As none of the cases relied upon by appellant, arising in Baltimore or Montgomery County, directly address the binding effect of the local master plan where the county reviews development or subdivision plans, we find cases involving development and subdivision plans, from sister charter counties, Prince George's County and Wicomico County, to be instructive. Maryland Ann.Code Article 25A, § 5(X)(1)(i) (1957, 2005 Repl.Vol.), authorizes Baltimore County and Wicomico County to enact local laws "for the protection and promotion of public safety, health, morals, and welfare, relating to zoning and planning." Maryland Ann.Code Article 28, § 7–110, authorizes Montgomery County and Prince George's County to enact a general plan "for the protection and pro-

motion of health, safety, morals, comfort, and welfare of the inhabitants of the regional district"

## *(2) Prince George's County*

In *Coffey v. Md.–Nat'l Cap. P. & P. Comm'n,* 293 Md. 24, 25, 441 A.2d 1041 (1982), a case originating in Prince George's County, the Court of Appeals held, "when subdivision regulations require that a proposed subdivision comply with the master plan, an application for approval of a preliminary subdivision plan that fails to so comply must be rejected." In *Coffey,* the Planning Board rejected a proposed subdivision plan finding that Prince George's County Code § 24–103(a)(1) requires subdivision plats to conform with the Prince George's County Master Plan. 293 Md. at 25, 441 A.2d 1041. The circuit court affirmed this rejection. *Id.* The Court rejected the arguments of Coffey, who argued that master plans are guides and explained, "[n]o opinion of this Court has made a statement relative to master plans acting only as guides in the context of the facts here involved." *Id.* at 26, 441 A.2d 1041. At oral argument, counsel for the Commission explained, "the Commission regarded the master plan as binding in subdivision matters subsequent to the enactment of the regulation requiring proposed subdivisions to conform with the master plan." *Id.* The Court stated:

As the author points out in 4 R. Anderson, *American Law of Zoning 2d* § 23.20, at 89 (1977), "Subdivision controls are imposed for the purpose of implementing a comprehensive plan for community development. To achieve this end, plats submitted to a planning commission for approval must be examined in relation to the official map and the master plan." Moreover, as the court observed in *Popular Refreshments, Inc. v. Fuller's Milk Bar, etc.,* 85 N.J.Super. 528, 537, 205 A.2d 445 (1964), *petition for certification denied,* 44 N.J. 409, 209 A.2d 143 (1965), "If planning boards had no alternative but to rubber-stamp their approval on every subdivision plat which conformed with the zoning ordinance, there would be little or no reason for their existence. While planning and zoning complement each other and serve

certain common objectives, each represents a separate municipal function and neither is a mere rubber-stamp for the other," citing *Levin v. Livingston Tp.*, 35 N.J. 500, 506, 173 A.2d 391 (1961).

*Id.* at 29–30, 441 A.2d 1041.

In *Coffey*, the Court analyzed the facts of the case, and concluded:

Here we have a regulation duly enacted by the legislative body for Prince George's County which specifies that the planning board shall not approve a subdivision plat not in compliance with the master plan. This subdivision regulation is as much entitled to obedience as any other legislative enactment. The need for the regulation specifying that a subdivision plan must conform to the master plan can be illustrated by comparison to the putting of water in a teacup drop by drop. After a period of time there comes the drop which will cause the cup to overflow. By analogy, developing some of the lots in conformity with the existing zoning will not disrupt the master plan. Concentrated use and development, however, will disrupt it. The legislative body wished to avoid this when it specified that subdivisions must comply with the master plan. Accordingly, the Commission was justified in rejecting Coffey's proposed subdivision for his failure to conform that proposal with the master plan.

293 Md. at 30–31, 441 A.2d 1041.

The Court of Appeals, in *Wash. Bus. Park Assocs.*, 294 Md. at 303, 449 A.2d 414, reviewed a dispute over the subdivision of vacant land in Prince George's County. The Court of Appeals vacated the judgment of this Court, remanding without reversal or affirmance, and held:

*Coffey*, 293 Md. 24 [441 A.2d 1041], was decided subsequent to consideration of this case by the Commission and both courts which have reviewed the matter. Moreover, although failure of the proposed subdivision to comply with the master plan was argued before the Commission, both lower courts, and us, that issue is not properly before us, as we have pointed out. We do not know why the Commission

reached the conclusion it did. Its action may have been based upon noncompliance with the master plan, some other provision of the subdivision regulations authorized by statute, a desire to accommodate the State Highway Administration, or some other reason. Given those facts we believe the Commission should have an opportunity to address the issue here with knowledge of the fact that in *Coffey* we have held that when the Prince George's County subdivision regulations require that a subdivision plan comply with a master plan, that plan is not considered a mere guidepost or set of recommendations as in zoning matters.

*Id.* at 316, 449 A.2d 414.

In *Archers Glen Partners, Inc. v. Garner,* 176 Md.App. 292, 933 A.2d 405 (2007), *aff'd,* 405 Md. 43, 949 A.2d 639 (2008), this Court analyzed the binding effect of the Prince George's County Master Plan on a developer's application for approval of a preliminary plan for a subdivision. This Court stated: "After observing generally, neither type of plan [master plan or general plan] imposes mandatory criteria, we recognized a provision contained in the County's subdivision regulations, specifically, § 24–121(a)(5), Prince George's County Code. It provides that the subdivision plan 'shall conform to the area master plan.'" 176 Md.App. at 301, 933 A.2d 405. We concluded that based on this "conform to" language and the *Coffey* decision, the master plan is a binding document in the context of subdivision regulations. *Id.* at 315, 933 A.2d 405.

In *Md.-Nat'l Cap. P. & P. Comm'n v. Greater Baden– Aquasco Citizens Ass'n,* 412 Md. 73, 102, 985 A.2d 1160 (2009), the Court of Appeals reiterated that the Prince George's County Master Plan is binding when the County reviews subdivision plans, as the County's Subdivision Regulations, namely Prince George's County Code § 24–121(a)(5), provides that, the "plat shall conform to the Master Plan."

### (3) Wicomico County

In *Pomeranc–Burke, LLC v. Wicomico Envtl. Trust, Ltd.,* 197 Md.App. 714, 716, 14 A.3d 1266 (2011), Pomeranc–Burke submitted a proposed subdivision plan to the Wicomico County

Planning & Zoning Commission. The Commission denied the proposed subdivision plan and Pomeranc–Burke appealed the denial to the County Board of Appeals, which affirmed the denial of the plan. *Id.* at 716–17, 14 A.3d 1266. Pomeranc–Burke then appealed to the circuit court which affirmed the decision of the County Board. *Id.* at 717, 14 A.3d 1266.

Pomeranc–Burke appealed to this Court, contending that the Wicomico Planning and Zoning Commission did not have the authority to deny appellant's application on the ground that the application did not comply with the general purposes provisions of Wicomico County, Md., Code Art. I, §§ 225–27 or 225–51A. *Id.* at 717–18, 14 A.3d 1266. This Court, speaking through Judge James Eyler, affirmed the Board of Appeals, holding that, the "Board was entitled to consider the purposes of the ordinances and the [Wicomico County] Comprehensive Plan as part of its analysis" and "the purpose sections are part of the ordinances themselves, not a preamble to an ordinance, and there is no asserted internal inconsistency." *Id.* at 748, 14 A.3d 1266.

It is settled that an agency may deny approval of a proposed subdivision, even if it meets zoning requirements, when it does not comply with an applicable plan and the relevant jurisdiction requires compliance with the plan. *See Maryland–National Capital Park and Planning Commission v. Washington Business Park Associates,* 294 Md. 302, 449 A.2d 414 (1982); *Coffey v. Maryland–National Capital Park and Planning Commission,* 293 Md. 24, 441 A.2d 1041 (1982); and *Board of County Commissioners v. Gaster,* 285 Md. 233, 401 A.2d 666 (1979).

Almost all of the Board's findings related to the size, location and design of the specific subdivision (e.g., findings related to size, street arrangement, entrances, linear arrangement, forest buffers, and slopes). Appellant's argument is that the Board could not consider and rely on legislative expressions of general purposes and general planning goals, regardless of whether legally binding, as distinguished from specific requirements. Our reading is that the Board considered the purposes of the applicable

ordinances and consistency with the relevant Plan provisions in interpreting and applying the cluster development ordinances in their entirety. It had the power to do so as long as it did not violate specific legislative requirements. An agency's denial shall not be arbitrary, but here, there was substantial evidence to support the findings.

*Id.* at 750, 14 A.3d 1266.

### (4) Analysis

■ Based on the facts of this case and the relevant case law, we conclude that the Master Plan is binding as to development and subdivision plans in Baltimore County. Here, direct statutory provisions—B.C.C. § 26–166(a) of the 1988 B.C.C., providing: "All development of land must conform to the master plan, including adopted community plans and these regulations . . ." and the current B.C.C. § 32–4–102(a)(1), providing: "Subject to limitation in the Charter, all development of land shall conform to: The Master Plan; . . ." [16]—support the conclusion that the Master Plan is binding. These statutes are the equivalent of Prince George's County Code § 24–121(a)(5).[17] The Court of Appeals and this Court concluded that under Prince George's County Code § 24–121(a)(5), the County's master plan is binding when Prince George's County reviews subdivision matters. Likewise, we conclude that, in light of B.C.C. § 26–166 and B.C.C. § 32–4–102, the Master Plan is not merely a guide, but rather is binding when Baltimore County reviews development and subdivision matters.

As this Court explained in *Archers Glen,* even though the master plan itself does not impose any "mandatory criteria,"

---

**16.** We shall refer to both the 1988 and current versions of the B.C.C., as the Planning Staff, Planning Board and Board considered whether the amended plan conflicted with the 1989–2000 and 2010 Master Plans.

**17.** Prince George's County Code § 24–121(a)(5) provides:

The plat shall conform to the area master plan, including maps and text, unless the Planning Board finds that events have occurred to render the relevant plan recommendations no longer appropriate or the District Council has not imposed the recommended zoning.

the "provision contained in the County's subdivision regulations, specifically, § 24–121(a)(5), Prince George's County Code" provides "that the subdivision plan 'shall conform to the area master plan.'" 176 Md.App. at 301, 933 A.2d 405. Given that the language of B.C.C. § 26–166 and B.C.C. § 32–4–102 is identical to that in Prince George's County Code § 24–121(a)(5), we reject appellant's argument that the Baltimore County Master Plans of 1989–2000 and 2010 are guides because the plans do not contain "mandatory criteria."

■ As the Court of Appeals explained in *Coffey*, and as adopted by this Court in *Pomeranc–Burke*, "when subdivision regulations require that a proposed subdivision comply with the master plan, an application for approval of a preliminary subdivision plan that fails to so comply must be rejected." 293 Md. at 25, 441 A.2d 1041; 197 Md.App. at 750, 14 A.3d 1266. As such, based on B.C.C. § 26–166(a) of the 1988 B.C.C. and the current B.C.C. § 32–4–102, the Board did not err on April 6, 2007, in remanding the proposed amended plan to the Planning Board to determine whether it conflicted with the Master Plan, nor did it err in finding on July 1, 2009, that the plan, in fact, conflicted with the Master Plan.

### B. B.C.C. § 22–37 and § 22–38

■ Appellant contends that the language of B.C.C. § 22–38, which provides: "Compliance with the development regulations hereinafter set forth shall be deemed the fulfillment of the development policies set forth in Section 22–37 and purposes set forth in Section 22–38" should be interpreted to mean "that compliance with the development regulations 'shall be deemed' in conformity with the master plan." Appellant argues that "[b]ecause there were no comments returned by any county agency at the CRG Meeting on April 1, 2005 indicating that the [amended plan] failed to comply with any of Baltimore County's development standards, and more importantly because the CRG approved the amended plan by operation of law, the [amended plan] fulfilled the development policies and purposes set forth in B.C.C. § 22–37." Appellant

contends that by virtue of B.C.C. § 22–38 the amended plan is deemed to be in compliance with the Master Plan.

Appellant's argument that B.C.C. § 22–37 and § 22–38 create a system of deemed compliance with the Master Plan is without merit. B.C.C. § 22–38 is an introductory section of the B.C.C. addressing the purposes of the regulations contained within Article Four, "Development Regulations of Baltimore County," and provides, in pertinent part:

(b) To implement the future growth and development of Baltimore County in accordance with the master plan.

\* \* \*

Compliance with the development regulations hereinafter set forth shall be deemed the fulfilment of the development policies set forth in section 22–37 and purposes set forth in section 22–38.

"Our goal in construing any regulatory scheme is to 'extract and effectuate the actual intent of the Legislature in enacting the statute.' Our inquiry in this regard begins with a reading of the plain language of the statutory text." *Casey v. Mayor and City Council of Rockville,* 400 Md. 259, 288, 929 A.2d 74 (2007) (citations omitted). As the Court of Appeals explained, in *Kane v. Bd. of Appeals,* 390 Md. 145, 161–62, 887 A.2d 1060 (2005), *cert. denied,* 547 U.S. 1179, 126 S.Ct. 2355, 165 L.Ed.2d 279 (2006):

This Court has previously stated that "local ordinances and charters are interpreted under the same canons of construction that apply to the interpretation of statutes." It is also a well settled principle of law that " 'the cardinal rule of statutory interpretation is to ascertain and effectuate the intention of the legislature[. . . .]' " For that purpose, "we begin our inquiry with the words of the statute, and, when the words of the statute are clear and unambiguous, according to their commonly understood meaning, we ordinarily end our inquiry there also." Finally, this Court must "construe a statute as a whole so that no word, clause,

sentence, or phrase is rendered surplusage, superfluous, meaningless, or nugatory."

(Citations omitted).

Appellant's argument fails based on a plain reading of Article Four. Article Four of the 1978 B.C.C. (1988/89 Supp.) provides for a specific and detailed development review and approval process for subdivision plans. The subsections composing Article Four set forth a process under which a proposed development plan is to be reviewed and approved in Baltimore County. One of the determinations required to be made during this process is whether a proposed plan conflicts with the Master Plan. Specifically, B.C.C. § 22–54 (1978, 1988/89 Supp.) provides for a predevelopment conference in which an applicant is provided with information "about government policies, standards, and legislation which could pertain to the applicant's property" including "master plan intent and conflict." After the predevelopment conference, pursuant to B.C.C. § 22–54, an applicant may submit a development plan for consideration. The plan is preliminarily reviewed by the Department of Public Works, pursuant to B.C.C. § 22–56, and if the plan is approved, it is sent to the CRG. Pursuant to B.C.C. § 22–57 and § 22–58, the CRG may find that the proposed plan conflicts with the Master Plan, and, pursuant to B.C.C. § 22–59, the CRG may refer the plan to the Planning Board to consider the plan. Under B.C.C. § 22–60, the Planning Board is authorized to make a determination on the plan and forward the determination to the County Council. In the event that the County Council takes no action, the Planning Board's determination is binding on the CRG, pursuant to B.C.C. § 22–60. Finally, pursuant to B.C.C. § 22–61, appeals may be taken to the Board.

Appellant has failed to provide case law or any other authority to substantiate the theory that a plan may be deemed in compliance with the Master Plan under B.C.C. § 22–38, after the proposed plan has been denied through the process described in B.C.C. §§ 22–53 through 22–68. Contrary to appellant's position, the process described in B.C.C.

§§ 22–53 through 22–68 provides the very basis by which Baltimore County determines whether a development plan is in compliance with the Master Plan. This Court "must construe a statute as a whole so that no word, clause, sentence, or phrase is rendered surplusage, superfluous, meaningless, or nugatory." *Kane*, 390 Md. at 162, 887 A.2d 1060. In this case, after the deployment of the process set forth in B.C.C. §§ 22–53 through 22–68, the CRG, the Planning Board and the Board determined that appellant's proposed amended plan conflicted with the Master Plan. To determine otherwise would render the extensive process set forth in B.C.C. §§ 22–53 through 22–68 "surplusage, superfluous, meaningless, or nugatory."

## C. The Taking Argument

◼ Appellant argues that B.C.C. § 22–18 (1978, 1988/89 Supp.) "provides a specific process to be followed in the event of a Master Plan Conflict," and this process "provides that if the county decides not to purchase the property subject to a master plan conflict, it cannot deny development." Appellant contends that, pursuant to B.C.C. § 22–18, a finding of a conflict with the Master Plan may be used to preclude development, only where "the property is reserved for acquisition by the County for a public improvement pursuant to the master plan." According to appellant, under B.C.C. § 22–18(b),[18] the County Council had sixty (60) days from receipt of

---

**18.** B.C.C. § 22–18(b) provides:

> If at its next meeting after the receipt of such report the planning board shall by resolution so direct, the director of planning shall then refer the question to the agency most nearly affected by or concerned with such proposals for any such public improvement or facility, whether such agency be the county board of education, the department of public works or any other governmental agency. Such agency shall then have thirty (30) days from the date of receipt of the inquiry within which to notify the planning board and the county council whether or not it believes that it would be in the public interest to reserve any portion or all of the land involved in such application for a building permit or for approval of a preliminary subdivision plan. The agency's recommendation, if affirmative, shall include a map showing the boundaries and area of the parcel to be

the Planning Board's decision to pass a resolution reserving the property for possible purchase, but did not do so. Appellant maintains that the Board, in denying the amended plan without purchasing the property, "effectively permitt[ed] an unconstitutional taking" of the property.

Appellees argue that this issue is not preserved for review. Appellees contend that appellant waited until December 17, 2008, to argue that the County failed to follow the B.C.C. § 22–18 reservation process. Appellees maintain that the Board's Opinion in 2007 demonstrates that this claim was not raised earlier, and that the Board, in its July 1, 2009, Opinion properly refrained from addressing appellant's argument as to B.C.C. § 22–18. In the alternative, appellees contend that B.C.C. § 22–18 "does not apply where a substantial development is approved, subject to conditions imposed to satisfy the master plan."

As a threshold matter, we must examine whether the claim is properly before us. Appellees contend that the Board correctly declined to rule on this argument as appellant failed to raise the issue prior to the December 17, 2008, hearing. We agree. Appellant's counsel conceded at oral argument, in this Court, that he was unable to locate a point in the record,

---

reserved and an estimate of the time, not to exceed fourteen (14) months following the date of such application, required to complete the acquisition of the land involved in such application. The agency's report and recommendation, if affirmative, shall be sent to the county council and to the planning board. The planning board shall have a period of thirty (30) days from the date of the agency's report, to submit its recommendations to the County Council for their consideration. After receipt of the planning board's recommendation or after the expiration of thirty (30) days from the date of the agency's report, whichever shall first occur, the county council shall, if it determines that all or part of the land described in the agency report should be reserved, pass a resolution declaring the reservation and describing the land to be reserved. Failure by the county council to pass such resolution within sixty (60) days of the date of the agency's report and recommendation shall terminate the procedure under this section and shall prevent any or all of the land described in the agency's report and recommendation from being subject to the procedures of this section for a period of two (2) years from the date of the agency's report and recommendation.

prior to December 17, 2008, at which he previously raised the impermissible taking argument.

Appellant did not raise the taking argument in its Notice of Appeal, filed on April 26, 2005, which stated:

NOW COMES HNS DEVELOPMENT, LLC, by and through its attorneys . . . and appeals the final action of the [CRG] taken April 1, 2005 denying the [amended plan] filed by [appellant] to the County Board of Appeals of Baltimore County. This appeal is taken pursuant to Baltimore County Code, 1988, ed., as amended, Section 22–61 and Baltimore County Code of 2003, Section 32–4–104.

Appellant, HNS Development, LLC was the Petitioner seeking to amend the approved CRG for Phase II of Longfield Estates.

Between October 2005, and August 2006, the Board held six days of public hearings on CRG's denial of the plan. This issue was not raised before the Board at that time. On April 6, 2007, the Board issued a decision remanding the matter to the Planning Board for a determination as to whether the proposed amended plan conflicted with the Master Plan. On April 17, 2008, the Planning Board adopted Director Keller's report finding a conflict with the Master Plan and forwarded its findings to the Board.[19] In the decision of July 1, 2009, the Board stated: "Nevertheless, having received the matter *de novo*, our referral for the Planning Board determination as to Master Plan conflict was essential to a final decision."

---

19. At oral argument, in this Court, appellant alleged that it was not until the Planning Board found a Master Plan conflict on April 17, 2008, that it could raise the B.C.C. § 22–18 taking argument. We disagree. The Planning Board was charged by the Board with determining whether the amended plan conflicted with the Master Plan. Appellant's contention that denial of approval of the amended plan would constitute a taking, pursuant to B.C.C. § 22–18, was directly relevant to appellant's position that the Planning Board could not find the amended plan conflicted with the Master Plan. Further, B.C.C. § 22–18 explicitly directs that the Planning Board examine a preliminary plan to determine if it will interfere with the County's ability to effectuate certain capital improvements.

In *Grasslands Plantation, Inc. v. Frizz–King Enters., LLC,* 410 Md. 191, 213, 978 A.2d 622 (2009) (quoting *Halle Companies v. Crofton Civic Ass'n,* 339 Md. 131, 141, 661 A.2d 682 (1995)), the Court of Appeals held:

> [T]he context in which the term *de novo* is used . . . means that on appeal there shall be a *de novo* hearing on those issues which have been appealed and not on every matter covered in the application. In this sense *de novo* means that the Board of Appeals may hear testimony and consider additional evidence pertaining to the issue or issues presented on appeal.

The Court of Appeals explained:

> Although the issues to be addressed on review by the Board may be limited, new and additional evidence is permitted. The proceedings, therefore, are wholly original with regard to all issues properly raised.

*Id.* (quoting *Halle Companies,* 339 Md. at 142, 661 A.2d 682).

In *Halle Companies,* 339 Md. at 141–42, 661 A.2d 682 (quoting *Daihl v. County Bd. of Appeals,* 258 Md. 157, 162, 265 A.2d 227 (1970)), the Court of Appeals held:

> We think that the context in which the term *de novo* is used in Section 501.6 and 501.3 . . . means that on appeal there shall be a *de novo* hearing on those issues which have been appealed and not on every matter covered in the application. In this sense *de novo* means that the Board of Appeals may hear testimony and consider additional evidence pertaining to the issue or issues presented on appeal. See Vol. 2, *The Law of Zoning and Planning,* Rathkopf, ch. 65–30, § 7. The original nature of a *de novo* hearing with its quality of newness is in contra-distinction to a review upon the record as exists where matters are heard on certiorari. 73 C.J.S. *Public Administrative Bodies and Procedure,* § 204.

We conclude that the Board did not err in failing to address this issue in its July 1, 2009, decision. The issue had not been raised previously in the CRG process, before the Board on appeal in 2005, through 2006, or before the Planning Board on remand and, as such, was not a part of Planning Board's April

17, 2008, Report to the Board. By not raising the issue in its Notice of Appeal to the Board, before the Board in the 2005, through 2006, proceedings, or before the Planning Board, on remand, when the Planning Board was charged by the Board with reviewing the amended plan to determine whether or not it conflicted with the Master Plan, appellant failed to properly bring the issue before the Board, and failed to preserve the issue for review.

Alternatively, we conclude that denial of appellant's proposed amended plan does not constitute an unauthorized taking under B.C.C. § 22–18. B.C.C. § 22–18(a) provides: **"When any application for a building permit or for approval of the preliminary plan of any subdivision** shall be forwarded to the director of planning for his consideration and approval. ..." (Emphasis added). Here, appellant sought approval of an amendment to an existing subdivision plan, not a building permit or approval of a preliminary plan of a subdivision. In the Notice of Appeal, filed on April 26, 2005, appellant acknowledged: "Appellant, HNS Development, LLC was the Petitioner seeking to amend the approved CRG for Phase II of Longfield Estates." The application for approval of the preliminary subdivision plan of Longfield Estates was submitted in 1991. It was in 1991, that, if applicable, the reservation process of B.C.C. § 22–18 would have been considered by the Planning Board. In 1991, the County approved the application for the subdivision of Longfield Estates, and Longfield Estates was developed in compliance with the plan.[20] Appellant has cited no case law to support the contention that the B.C.C. § 22–18 reservation process applies to a proposed amendment to an existing developed subdivision. By plain reading, B.C.C. § 22–18 does not apply to the approval of an amendment to an existing approved plan.

"In zoning cases, in determining whether the challenged zoning regulation amounts to a taking of private prop-

---

**20.** No appeal was taken from the 1991 approval of the application for the preliminary subdivision of Longfield Estates.

erty, we have said that no compensable taking occurs so long as the zoning regulation does not deprive the owner of 'all beneficial use of the property.'" *Md.-Nat'l Cap. P. & P. Comm'n v. Chadwick*, 286 Md. 1, 10, 405 A.2d 241 (1979) (citations omitted); *Penn Cent. Transp. Co. v. N.Y. City*, 438 U.S. 104, 127, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978) (to constitute a taking the county by denying the proposed plan would have to deny appellant all reasonable use of its property).

 Longfield Estates is an existing development consisting of 194 acres and 67 lots. During the December 17, 2008, hearing, counsel for appellees explained that in 2004, appellant purchased thirteen acres of Longfield Estates for $ 880,000.00. Subsequently, while seeking approval of the amended plan, appellant renovated the Langenfelder mansion and sold a five acre lot containing the mansion for $1,350,000.00. Appellant acknowledges having sold Lot 42 in 2007, while retaining the right to subdivide the lot. Given that the property has already been improved and sold,[21] in part, appellant has not been denied all reasonable or beneficial use of the property.

### D. Substantial Evidence

Appellant argues that the Board's July 1, 2009, decision was "both legally faulty and unsupported by the record." Appellant argues that the Board committed reversible error by relying exclusively on the findings of the Planning Board, and by failing to "provide any independent analysis of how the plan conflicts with the Master Plan." Appellant contends that the Planning Board's decision, "was based on a vote to simply affirm (essentially rubber stamp) a prior decision, namely the Planning Board's 1991 decision." Appellant argues that this action by the Planning Board was not based on "an analysis of the evidence and testimony relating to whether a Master Plan conflict actually existed at the time." Appellant contends that

---

21. Appellant concedes in its brief that, "[i]t is correct that [appellant] has sold Lot 42 in 2007." The parties refer to the mansion lot as Lot 42.

the Planning Board did not consider changes in condition or in the development of the site since the 1991 decision.

Appellees respond that Director Keller's report of February 20, 2008, providing updated information, "contains adequate facts and reasons to find that the [amended plan] conflicts with the master plan." Appellees contend that the Board's final decision of July 1, 2009 was correct as "[t]he Board recognized that the Planning Director's Report, as adopted by the Planning Board, was thorough and well-conceived, with adequate findings of fact, and a reasonable basis to find a Master Plan conflict based on the 1991 CRG approval, Note 18 particularly, and the entire history."

By contending that the Board's decision is not supported by the record, appellant, in essence, raises the issue of whether the decision is supported by substantial evidence. In an assessment of whether an administrative agency's "decision is supported by substantial evidence, we traditionally apply the rule that substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Md. State Police v. Lindsey*, 318 Md. 325, 333, 568 A.2d 29 (1990). Therefore, this Court will review the Board's decision to determine "whether a reasoning mind reasonably could have reached the factual conclusion the agency reached." *Id.* "In applying the substantial evidence test, we do not substitute our judgment for the expertise of the agency" and we "must review the agency's decision in a light most favorable to the agency, since 'decisions of administrative agencies are *prima facie* correct,'" and "carry with them the presumption of validity." *Id.* 333–34, 568 A.2d 29. The Court of Appeals further explained the substantial evidence test as follows:

> [T]he test is a deferential one, requiring 'restrained and disciplined judicial judgment so as not to interfere with the agency's factual conclusions[.]' This deference applies not only to agency factfinding, but to the drawing of inferences from the facts as well. When, however, the agency's decision is predicated solely on an error of law, no deference is

appropriate and the reviewing court may substitute its judgment for that of the agency. In brief, so long as the agency's decision is not predicated solely on an error of law, we will not overturn it if a reasoning mind could reasonably have reached the conclusion reached by the agency.

*Md. State Police*, 318 Md. at 334, 568 A.2d 29 (citations omitted) (quoting *State Admin. Bd. of Election Laws v. Billhimer*, 314 Md. 46, 58, 548 A.2d 819 (1988)).

 In this case, there is substantial evidence to support the Board's conclusion that the amended plan conflicted with the 2010 Master Plan. The Board in its post-remand order of July 1, 2009 relies primarily on Director Keller's report of February 20, 2008, in which Director Keller found that the amended plan conflicted with the 1989–2000 and 2010 Master Plans. In the report, Director Keller explicitly stated that he considered the 1991 conflict with the Master Plan, the Baltimore County Master Plan of 2010, and the Greater Kingsville Area Community Plan of 1996. In his recommendation, Director Keller explained that Note 18 "puts everyone (existing and future property owners) on notice" that development on Lot 42 and/or Parcel "A" was not permitted, and was considered a conflict with the Master Plan. Providing current information, Director Keller examined "how the area between Big Gunpowder River and Little Gunpowder River has maintained its character along Belair Road since the original approval in 1991" and concluded, "[o]ver the past 17 years the area has remained remarkably similar." Director Keller also explained how the "Development Regulations although significantly changed over the past 17 years still maintain the same purposes and direction in effect at the time that this project was reviewed." In conclusion, Director Keller stated, the "Baltimore County Master Plan 2010 and Greater Kingsville Area Community Plan adopted as part of the Master Plan strongly support and provide [a] rational[e] for citing again as occurred in 1991 a Master Plan conflict."

In the written Opinion, accompanying the July 1, 2009, Order, the Board explained:

As a result of the Remand by the [Board], the question of a possible conflict of the Petitioner's proposed amendment with the Baltimore County Master Plan 2010 was taken up by the Planning Staff.... The Planning Board met and adopted the Staff Report, and confirmed that a conflict with the Master Plan 2010, did in fact, exist....

\* \* \*

Therefore, once the Planning Board has now determined that such a conflict with the 2010 Master Plan does in fact exist, and no action having been taken to the contrary by the County Council, it is clear that the requested amendment to the original CRG Plan in this matter cannot be allowed.

Contrary to appellant's contentions, the Board considered the current condition of the property and the current status of areas surrounding the property, and determined that the amended plan conflicted with the 2010 Master Plan. Such evidence was sufficient to constitute substantial evidence to support the Board's July 1, 2009, decision that the amended plan conflicts with the Master Plan.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED; COSTS TO BE PAID BY APPELLANT.**